ETHEL M. DURHAM v. McLEAN TRUCKING COMPANY

(Filed 20 November, 1957)

1. **Appeal and Error § 51—**

On appeal from involuntary nonsuit, evidence offered by plaintiff and not challenged by defendant must be treated as being before the jury and considered in determining the question of the sufficiency of the evidence.

2. **Automobiles § 13—**

While the mere skidding of a motor vehicle does not imply negligence, skidding which is the result of the negligent operation of the vehicle, may be the basis of recovery.

3. **Automobiles § 41j—Evidence that skidding resulted from negligent operation of the vehicle held to take issue to jury.**

Evidence that some 200 feet beyond the crest of a hill, plaintiff's vehicle was standing disabled on the side of the road as the result of skidding on unexpected ice, that the operator of defendant's tractor-trailer, upon clearing the crest of the hill, applied his brakes, that the trailer "jack-knifed" and struck plaintiff's vehicle, causing the injuries in suit, with further testimony that the trailer skidded be-

DURHAM *v.* TRUCKING CO.

cause of excessive speed, improper braking, or improper steering, and that defendant's driver stated immediately after the wreck that he was so excited that he just lost control, *is held* sufficient to overrule nonsuit.

APPEAL by plaintiff from *Crissman, J.,* at 18 March, 1957, Term of FORSYTH.

*Archie Elledge and Clyde C. Randolph, Jr., for plaintiff, appellant.*
*W. Dennie Spry for defendant, appellee.*

JOHNSON, J. This is a civil action brought by the plaintiff to recover damages for personal injuries sustained when a passenger car in which she was sitting was hit by the defendant's tractor-trailer.

At the close of the plaintiff's evidence the trial judge allowed the defendant's motion for judgment as of nonsuit. The single question presented by the appeal is whether this ruling was correct.

Early on the morning of Sunday, 18 December, 1955, the plaintiff, driving her husband's Oldsmobile passenger car, left her home in Winston-Salem to visit relatives in Durham. She left the house about 7:15 o'clock. It was cold, and a drizzling rain was falling.

The record of weather observations made by the U. S. Department of Commerce Weather Bureau at the Smith Reynolds Airport, Winston-Salem, at 7:31 a.m. showed cloudy weather with light rain falling and a temperature of 33 degrees. The Weather Bureau records also show that the rain began at 6:12 a.m. and that the temperature reached the freezing mark of 32 degrees one or two times between 7:00 a.m. and 8:00 a.m.

The plaintiff left Winston-Salem on N. C. Highway No. 150. At a point about two miles west of Kernersville she hit a slick place on the road. She said she didn't know whether it was ice or "just the wet road." She slowed down and drove on at about 25 miles per hour. On topping the crest of a hill about a mile west of Kernersville she observed at the bottom of the hill an overturned tractor-trailer belonging to the defendant. It was on the right side, off the paved portion of the highway. The tractor was about 400 feet from her when she first saw it. She also observed a Ford car parked on the opposite side of the road from the overturned vehicle. Some men were standing in the middle of the road. They appeared to be carrying on a conversation with someone in the car. After observing the situation at the bottom of the hill, the plaintiff started to slow down. When she put on brakes "the car went into a skid and slid off on the right-hand shoulder of the road, with the front

wheels on the shoulder and the rest of the car kind of hanging down the bank," at an angle of about 30 degrees, with the back end settled on a clump of dirt. The pavement was 18 feet wide. The car came to rest about halfway down the hill and about 200 feet up the hill from the overturned tractor-trailer.

The plaintiff, knowing there was a drop-off on both sides of the car and that she could not get out by herself, started blowing her horn for help. One of the men who had been standing in the road ran up to the car and offered to help get her out. He asked if she was hurt and she said she was not. About that time they heard a truck coming. The man told her to stay in the car until the truck passed and he would help her get out. An instant later another tractor-trailer belonging to the defendant trucking company, driven by Robert S. Griffith, came over the hill. The plaintiff heard the hiss of air brakes two or three times as the tractor-trailer approached her. "The tractor stayed in his lane, but the trailer started jack-knifing," and the back end of the trailer left the highway and hit the plaintiff's car "with an awful bang," striking it "from the door on the left-hand side to the front." In the collision the plaintiff sustained the personal injuries in suit.

The plaintiff testified that the road surface on the hillside was icy, and on cross-examination she admitted this was the first icy place she had encountered on the road, except "one short little patch about two miles west of Kernersville," and that until her car started skidding on the hillside she did not know there was any ice on the road.

The defendant's driver Griffith was examined by the plaintiff. He testified that when he left the terminal that morning his load was something over 28,000 pounds and his destination was Norwich, Connecticut; that he was familiar with the hill— had been over it before; that as he approached the hill crest that morning he was going about 25 miles per hour; that he saw a fusee on the crest of the hill, on the pavement to the right of the center line, which indicated danger over the hill; that he slowed down some; that he had shifted previously from high third gear into low fourth. The speed range of low fourth is higher than the range of high third; that after he topped the hill he saw plaintiff's car some 200 feet down the hill and the overturned vehicle at the bottom of the hill; that the front end of the car appeared to him to be sticking over on the pavement; that he steered to the left and applied his brakes, and then for the first time discovered he was on ice; that "the vehicle then jack-knifed" and the trailer slid around to the right and was at an angle to the tractor at the time of the collision. He said he stopped his "rig" at the bottom of the hill

by "light-braking." He testified further that he had driven tractor-trailers in the winter of 1953 and 1954 in New England and had had experience in the operation of a tractor-trailer combination in snow and ice. He said he had not encountered any ice on the highway that morning before reaching this particular hill and did not see or notice it then until he started over to the left and his tractor jackknifed. He stated that "the usual procedure for bringing a tractor out of a jackknife . . . is to apply your trailer brakes lightly and accelerate (the tractor) a little. I did that prior to my collision with Mrs. Durham's car, but I don't know at what point I did that."

The plaintiff alleges numerous phases of negligence against the defendant as proximate causes of the collision. Among them are these: (1) that driver Griffith was driving at a speed greater than was reasonable and prudent under the conditions then existing, in violation of G.S. 20-141, and (2) that Griffith was negligent in failing to maintain a proper lookout and in failing to keep the tractor-trailer under proper control.

R. V. Durham, plaintiff's husband, who was called as a witness, qualified as an expert in the operation of trucking equipment with air brakes similar to the defendant's unit involved in this wreck. In response to a hypothetical question to which there was no objection, he stated that what caused the trailer to go off the highway and strike the plaintiff's automobile in his opinion "would be three things: would be excessive speed, improper braking on that condition of road, or improper steering." "Q. (by defendant's counsel). One of three things? A. It could be either of the three. Q. (by defendant's counsel). Either one of three things? A. Yes, sir, or it could be a combination of two of the three, or three of the three at the same time."

The plaintiff, on being recalled to the stand, testified without objection that after the wreck the defendant's driver Griffith told her "that he was so excited that he just lost control. . . ."

The admissibilty of the foregoing testimony of the plaintiff and of R. V. Durham not having been challenged, it must be treated as being before the jury with all its natural probative force. *Lambros v. Zrakas,* 234 N.C. 287, 66 S.E. 2d 895. When so treated, and considered along with other supporting evidence, it suffices to make out a *prima facie* case of actionable negligence.

While the mere skidding of a motor vehicle does not imply negligence (*Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406; *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251), nevertheless, skidding may be caused or accompanied by negligence on which liability may be predicated. Accordingly, skidding may form the basis of a recovery where it results from some fault of

the operator amounting to negligence on his part. *Hoke v. Greyhound Corporation,* 227 N.C. 412, 42 S.E. 2d 593; *Williams v. Thomas,* 219 N.C. 727, 14 S.E. 2d 797; *Taylor v. Rierson,* 210 N.C. 185, 185 S.E. 627. Here we have evidence which, when considered in its light most favorable to the plaintiff, is sufficient to justify the inferences that the defendant's driver failed to exercise due care under existing conditions in controlling the movement of the tractor-trailer combination, and that such failure to exercise care proximately caused plaintiff's injuries. This makes it a case for the jury.

It is unnecessary to review or discuss the evidence bearing on other allegations of negligence relied on by the plaintiff, and we express no opinion on the ultimate merits of the controversy. The appeal limits us to a consideration of the evidence in its light most favorable to the plaintiff.

The judgment is

Reversed.