Almeda BRANCH, Plaintiff-Respondent,

v.

GORDON'S TRANSPORTS, INC., a corporation, Defendant-Appellant.

No. 8206.

Springfield Court of Appeals. Missouri.

Jan. 28, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 24, 1964.

William L. Mason, Jr., Robert T. Smith, St. Louis, Dalton & Treasure, John Hall Dalton, James C. Bullard, Kennett, for defendant-appellant.

Ward & Reeves, Eugene E. Reeves, Caruthersville, for plaintiff-respondent.

HOGAN, Judge.

This is an action to recover damages for personal injuries sustained in a collision

between motor vehicles. A jury found for the plaintiff and assessed her damages at $8,500.00. The defendant has appealed, assigning error to the giving of plaintiff's verdict-directing instruction and contending that the damages awarded are excessive.

The collision occurred in or near the intersection of U. S. Highway No. 61 and County Route E (which is referred to as the Cooter road) in Pemiscot County on December 4, 1961, at about 5:15 P.M. At the place in question, Highway 61 runs generally north and south; it is a 24-foot concrete slab with shoulders 10 feet wide at this point. It is intersected at right angles by Route E, 22 feet wide, which fans out to form a Y-shaped intersection on either side of Highway 61. Highway 61 is level and straight in that vicinity, and the intersection is clearly visible, ordinarily, at least 500 feet to the south.

At the time of the accident, it was dark and it was raining. The plaintiff was traveling northward in her own automobile, which was being driven by her husband. Some distance behind her, also traveling northward, was the defendant's trailer truck. The plaintiff, her husband and two friends had been shopping in a nearby community and were returning to Cooter. As the plaintiff's automobile was turning right, with the "back wheels * * * a foot or a foot and a half on the highway, or that much off," according to the driver, and "plum off of the highway," according to the plaintiff, the tractor or cab of the defendant's truck collided violently with the right rear of the plaintiff's automobile. Neither the plaintiff nor her husband saw the truck prior to the collision, but afterward the "truck was sitting in the road over into the Cooter road jackknifed." The plaintiff claims that she sustained a soft-tissue whiplash injury as a result of the accident.

The defendant's driver testified that he had seen the Branch vehicle between one-quarter and one-half mile before he came to the intersection. The truck, according to the driver, was being operated northward behind the Branch vehicle at a slow rate of speed, about 20 miles an hour, and "three or four cars" were approaching in the southbound (west) lane. When the truck had come within 70 or 80 feet of the Branch vehicle, and as the Branch vehicle was being turned to the right, or east, an oncoming car "just darted" out of the southbound lane into the northbound, or east, lane in which the truck was being driven. The driver applied his brakes; the truck "just automatically jackknifed," and went over to "the right side of the road." Because he "was riding backwards" just before the collision, the driver was unable to say where the third vehicle went. The testimony of a highway patrolman tended to prove that the defendant's truck had skidded diagonally to the northeast "in a jackknifed position" and had "slid into" the plaintiff's car. There were, in his words, "tire marks and skids off of the highway on the shoulder * * * in the mud." The truck had come to rest with the tractor pointing generally in an easterly direction in the north traffic lane of Route E, with the rear of the trailer pointing south or somewhat southeast. Other evidence will be noted in the course of the opinion.

The defendant's first and principal complaint here is that the trial court erred in giving the plaintiff's verdict-directing instruction for the reason that the instruction ignores or excludes from the jury's consideration the undisputed evidence that the defendant's vehicle had jackknifed and skidded out of control at the time of collision. Such a submission in this case, as the defendant's argument runs, is prejudicial because it fails to hypothesize for the jury's consideration the possibility of an accidental, or at least non-negligent, cause of the collision, which the defendant maintains the plaintiff's evidence shows. The plaintiff seeks to avoid a consideration of this point on the merits by maintaining it was not properly preserved for review in the defendant's motion for new trial, and

she further maintains that, in any event, the instruction was properly given.

■ The case was tried and submitted, as counsel concede here, upon the theory that the defendant's negligence could be inferred from the circumstances by application of the so-called "rear-end collision rule." This "rule" is that ordinarily if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle. State ex rel. Spears v. McCullen, 357 Mo. 686, 690–692, 210 S.W.2d 68, 70–71; Jones v. Central States Oil Co., 350 Mo. 91, 102, 164 S.W.2d 914, 920; Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, 408–409 [1]; Doggendorf v. St. Louis Pub. Sv. Co., Mo.App., 333 S.W.2d 302, 305 [1]; Hughes v. St. Louis Pub. Sv. Co., Mo.App., 251 S.W.2d 360, 362 [3]. The plaintiff submitted her case upon a single verdict-directing instruction which, after hypothesizing the respective positions of the two vehicles, and requiring a finding that plaintiff was a passenger in her own automobile and that it was "in the process" of making a right turn, then predicated a verdict for the plaintiff upon a finding that "[the driver] thereafter *allowed* the tractor-trailer unit that he was operating to run into and collide with the rear end of the said Buick automobile * * * and that *in allowing* the tractor-trailer to collide with the rear end of the Buick automobile * * * [the driver] failed to exercise the highest degree of care and was thereby negligent * * *." The language used, at least in submitting negligence, is very ° similar to that found in Instruction 1 in State ex rel. Spears v. McCullen, supra, 357 Mo. at 690, 210 S.W.2d at 70.

■ One of the arguments advanced here by the defendant is that the "rear-end collision rule" is wholly inapplicable to this case, and that plaintiff's verdict-directing instruction is erroneous for that reason. We do not consider it necessary for the purpose of this appeal to examine the limits and underlying theory of the "rear-end collision rule." That is not the real issue here. Rather, the precise question before us is whether upon the facts the plaintiff's mode of submission prejudicially assumed that the defendant's driver was in control of the truck, and erroneously excluded the possibility of a non-negligent cause of the accident through an insufficient hypothesis of the facts. In our view, this question must be examined in light of those cases which hold that if, in the process of making a prima facie case or in proving conduct which would ordinarily constitute negligence per se, the plaintiff adduces evidence which tends to show an accidental or non-negligent cause, or a matter which would exonerate the defendant, then the plaintiff's verdict-directing instruction may not ignore the evidence which tends to excuse the defendant, but must hypothesize the possibly non-negligent causes or exculpatory facts and require the jury to find that the defendant's conduct was in fact negligent. Otherwise, the verdict-directing instruction is said to be erroneous as ignoring the real issue, or excluding it from the jury's consideration. Doyle v. Wilmesherrer, Mo., 358 S.W.2d 837, 841 [7]; Kitchen v. Wilson, Mo., 335 S.W.2d 38, 45 [8]; Evans v. Colombo, Mo., 319 S.W.2d 549, 552–553; Karch v. Stewart, Mo., 315 S.W.2d 131, 137 [6]; Kitchen v. Pratt, Mo.App., 324 S.W.2d 144, 148 [5]. See Richardson et al., Legal Excuse and Unavoidable Accident, 4 Mo. Bar C.L.E. Series, Sect. 12.7, pp. 168–72.

■ We set to one side the plaintiff's contention that the point under discussion is not sufficiently preserved for review. The assignments made in defendant's motion for new trial and specifically directed

to Instruction 1 are that it "assumes matters not in evidence, and assumes controverted facts," and that it "failed to hypothesize the necessary facts essential to plaintiff's recovery." We agree that in ordinary circumstances such assignments fall short of the particularity required by Rule 79.03, V.A.M.R., and would, in most cases, be insufficient. Ayres v. Keith, Mo., 355 S.W.2d, 914, 917 [1, 2]. However, the rule pertaining to instructions which the defendant seeks to invoke is somewhat difficult to express in substantive terms, and counsel has couched his assignments in the very language of the case upon which he relies principally in this court, Evans v. Colombo, supra, 319 S.W.2d at 552 [3]. It is impossible to consider this appeal intelligently without considering the objections which are made to Instruction 1, and in the particular circumstances of this case, we consider that these assignments were sufficient. See Beezley v. Spiva, Mo., 313 S.W.2d 691, 695. In our opinion, the meritorious question on this appeal is whether Instruction 1 ignores the possibility of an accidental, or non-negligent, cause of the accident. A determination of this question calls for an examination of the evidence concerning the movements of the two vehicles just before the collision.

Neither of the two drivers appears to have had the other vehicle in sight at the time of the impact. Mr. Branch, plaintiff's driver, was simply not sure, as the testimony shows, whether the collision occurred on or off the concrete slab. Mr. Branch was cross-examined at length about the position of the plaintiff's automobile at the time of the collision, but could only say that the rear wheels "could have been two or three feet out into the highway or * * * two or three feet out into the Cooter road," but he was "not positive just exactly the inches and everything as to where the car was." Mr. Branch testified he did not actually see the defendant's truck until after the collision, but stated that he had (by deposition) said "the truck jackknifed and hit me." The plaintiff herself stated that her vehicle was struck "over in the Cooter intersection, plum off of the highway." The defendant's driver was unable to testify where the impact occurred because, in his words, "actually I didn't see exactly what was going on because I was going backwards and the tractor was up against the trailer."

Most of the evidence about the actual point of collision and the movements of the two vehicles immediately beforehand came from a highway patrolman called as a witness by the plaintiff. Much of his testimony seems to consist of conclusions based on his observation after he arrived on the scene 20 or 30 minutes after the accident.

At the time the trooper arrived, the Branch vehicle had been driven about 150 feet east on Route E—the Cooter road —and the tractor-trailer was sitting at an angle across Route E with the tractor in the north (westbound) lane, "actually pointing a little bit southeast," and the "back of the trailer was generally in a southerly direction." The trooper concluded the trailer had "come off of the highway in a jackknifed position and slid into her." The only marks which he observed "was marks, tire marks, and skids off of the highway on the shoulder. In other words, it was in the mud." Being asked to describe the damage done to the truck, the patrolman said there was damage to the right rear part of the tractor, which "came from the jackknifing," since the "right rear had jackknifed up against the right side of the trailer at the time," and described the only other damage to the truck as being found on the "left rear pull wheel" of the tractor, "around the drive axle." The trooper summarized his observation and conclusions by answering affirmatively when asked if he meant to say that "the tractor transport had jackknifed and slid off of the highway to the right off of the shoulder on across and up into Pemiscot County Route E. * * *" It is not disputed that it was dark, and was and had been raining at the time of the accident.

■ Without laboring the facts, we believe the plaintiff's evidence shows something more than the mere overtaking and striking of her vehicle from the rear. It is true that much of the trooper's testimony consisted of his conclusions and hearsay evidence, but such evidence may properly be considered when it is received without objection. Goodman v. Allen Cab Co., 360 Mo. 1094, 1100, 232 S.W.2d 535, 539 [4]; DeMoulin v. Roetheli, 354 Mo. 425, 434, 189 S.W.2d 562, 565 [3, 4]; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42 [1]. Beyond that, the testimony of the trooper was offered by the plaintiff and was not contradicted by any of her other witnesses, and therefore she is bound by his testimony. Craddock v. Greenberg Mercantile, Mo., 297 S.W.2d 541, 549 [13]; Kitchen v. Pratt, supra, 324 S.W.2d at 147–148 [3]; Evans v. Colombo, Mo.App., 311 S.W.2d 141, 144 [3].

■ If the plaintiff's evidence in this case had established only a clear and simple situation of the defendant's truck being driven for a considerable distance behind the Branch vehicle, then overtaking and colliding with it, we believe her submission would have been entirely proper. State ex rel. Spears v. McCullen, supra, 357 Mo. at 690–691, 210 S.W.2d at 70–71; see Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 269 [6]. In such case, an inference of negligence could be drawn from the facts. Doggendorf v. St. Louis Pub. Sv. Co., supra, 333 S.W.2d at 305 [1]; Hughes v. St. Louis Pub. Sv. Co., supra, 251 S.W.2d at 362 [3]. However, the plaintiff's evidence shows that the reason for the collision was that the truck jackknifed and skidded or slid laterally into the automobile, which had been turned east onto the Cooter road. Neither the skidding alone nor lateral sliding in itself signifies negligence, although the cause of that movement may be negligence. Doyle v. Wilmesherrer, supra, 358 S.W.2d at 841 [7]; Evans v. Colombo, supra, 319 S.W.2d at 550–551 [1]; Karch v. Stewart, supra, 315 S.W.2d at 135–136. Of course, this case involves a "jackknifing"

vehicle. It appears that a "jackknife" occurs when the trailer swings around and travels ahead of the tractor, McBeth v. Merchants Motor Freight, 248 Iowa 320, 79 N.W.2d 303, 304; Anno., 68 A.L.R.2d 353, 355, § 1, although from this record the term also implies a partial folding of the tractor and trailer. But the fact that a jackknifing truck is involved, in our view, calls for the application of no singular rule of law. Anno., 68 A.L.R.2d 353, 355–356. It seems clear to us that the sliding, skidding or lateral movement of a jackknifing truck creates no stronger inference of negligence than the skidding of some other type of vehicle. Merchants Motor Freight v. Downing, 8 Cir., 227 F.2d 247, 252–253; De Forest v. Soules, 278 Mich. 557, 270 N.W. 785, 786–787 [2, 3]; Durham v. McLean Trucking Co., 247 N.C. 204, 100 S.E.2d 348, 351 [3, 4], 68 A.L.R.2d 349, 353; Lee & Eastes, Inc. v. Continental Carriers, 44 Wash.2d 28, 265 P.2d 257, 260 [6]. In the case at hand, the plaintiff's only verdict-directing instruction predicated a finding for the plaintiff upon the bare hypothesis that the defendant's driver "* * * allowed the tractor-trailer unit * * * to run into and collide with the rear end of the said Buick automobile * * * [and thereby] failed to exercise the highest degree of care. * * *" We conclude that the plaintiff's verdict-directing instruction was erroneous, and prejudicially so, for the following reason: the plaintiff's evidence shows that her vehicle was struck because the defendant's truck jackknifed and moved or slid laterally into her automobile, but plaintiff's Instruction 1 completely excludes and forecloses the jury's consideration of the elements of jackknifing and sliding, or lateral movement—circumstances which do not necessarily imply negligence, but from which the inference is merely ambiguous. Doyle v. Wilmesherrer, supra, 358 S.W.2d at 841; Evans v. Colombo, supra, 319 S.W.2d at 552–553.

The plaintiff forthrightly suggests that even if Instruction 1 is erroneous, we

should ignore the error because the verdict was for the right party on the merits. While we are not convinced that the errors noted were not prejudicial, we do not wish to be understood as saying that plaintiff made no submissible case for the jury. We believe a jury might well find that the defendant's driver was negligent in causing the truck to jackknife and slide or move laterally. We are merely saying that the plaintiff should have hypothesized "so much of the entire occurrence, fairly considered," as caused the collision here. Evans v. Colombo, supra, 319 S.W.2d at 551–552. We do not undertake to define or limit the theories upon which a jury could have found the defendant's driver to be negligent, but we believe the evidence shows more than a mere skidding as a cause of the accident. The other matters developed in the briefs are not likely to recur in the event of a retrial, and we do not consider it necessary to develop them here.

For error in the giving of Instruction No. 1, the judgment is reversed and the cause remanded.

RUARK, P. J., and STONE, J., concur.