**Ray KARCH, Respondent,**

v.

**Gordon H. STEWART and Isthmian Lines, Inc., a Corporation, Appellants.**

**No. 46185.**

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

L. A. Robertson, Ernest E. Baker, Alexander & Robertson, St. Louis, for appellants.

Gregg Wm. Keegan, St. Louis, for respondent.

## HOLLINGSWORTH, Judge.

Defendants have appealed from a judgment of $8,500 rendered in favor of plaintiff, Ray Karch, in the Circuit Court of the City of St. Louis for personal injuries sustained when a tractor-trailer outfit operated by plaintiff collided with a Ford automobile driven by defendant Stewart in the course of the latter's employment by defendant Isthmian Lines, Inc., in the State of Illinois. It is defendants' contention that (1) no submissible case of defendants' negligence was made "on any theory of negligence not abandoned by plaintiff" and that the judgment should be reversed; (2) plaintiff failed to prove his freedom from contributory negligence, as required by the law of Illinois; (3) error in the submission instruction given in behalf of plaintiff; (4) error in the refusal of a sole cause instruction proffered by defendants; (5) error in the admission of evidence; (6) prejudicial limitation of defendants' argument to the jury; and (7) excessiveness of the verdict.

The collision occurred after dark, at about 9:30 p. m., on July 17, 1956, near but within the limits of the City of Edwardsville. Plaintiff, a truck driver in the employ of Voss Truck Lines, was operating one of the latter's tractor-trailers, hereinafter referred to as "plaintiff's truck", generally northward from the City of St. Louis to Chicago on Highway 66. Defendant Stewart, a solicitor for defendant Isthmian Lines, Inc. (a steamship line engaged in international commerce and having an office in the City of St. Louis), was operating a four-door sedan furnished him by his employer, hereinafter referred to as "defendants' car", southward from Decatur, Illinois, to St. Louis on said highway. At and on both sides of the point of collision, Highway 66 consists of a 16-foot wide, two-lane "black-top" roadway, with loose gravel shoulders on both sides of the pavement, all of which, at the time in question, were dry.

As plaintiff, proceeding generally northward, approached the point of collision, he was 100 to 150 feet to the rear of a northbound tractor-trailer truck operated by a third party. The two trucks, each proceeding at a rate of 20 to 25 miles per hour on its right side of the highway, rounded a slightly descending curve, passed under a railroad overpass, thence along a straight stretch of roadway for a distance of from 500 to 800 feet and approached the curve upon which the collision occurred. As the leading truck entered that curve, followed by plaintiff's truck, defendants' southbound car, after meeting and passing the first truck, skidded across the highway immediately in front of plaintiff's truck, resulting in the front end of plaintiff's truck striking the right side of defendants' car. The force of the collision crushed the front end of plaintiff's truck and the right side of defendants' car and both plaintiff and defendant Stewart were injured.

Plaintiff called defendant Stewart to the witness stand as his first witness. Stewart testified: On the night of the collision, as he traveled southward, at 25 to 30 miles per hour, on his right side of the highway, with his car lights on "low", he came to a curve in the highway, at which time he saw a truck (the one preceding plaintiff) approaching him from the south. The curve bore to Stewart's left, so that the approaching truck was on the inside and defendants' car was on the outside of the curve. As the leading truck came into the curve, its lights, which were and remained on "high", suddenly shone directly into Stewart's face, completely blinding him, so that he could

no longer see the course of the curve. Before the truck passed him, he "felt" the right front wheel of his car go off the pavement onto the shoulder and saw that he was about to strike a guardrail maintained upon the right shoulder at that point for the protection of southbound traffic. He turned his steering wheel sharply to the left to get back on the pavement and applied his brakes. "The rear end slew on the gravel and hit the right rear end or bumper hit the guardrail and that's what threw me across the road." From the time his car struck the guardrail, it was completely out of control. As his car skidded across the highway in an arc, he saw "just an instant before the collision" the lights of the vehicle (plaintiff's truck) which struck him; and that was his last memory of the event. After the collision, he "came to" and saw the red lights shining on the dash of his car, indicating that the ignition was on and that the motor was not running, and reached over and turned off the ignition. His lights still were on "low". He did not "steer" his car into the path of plaintiff's tractor-trailer, but was trying to get it under control.

Plaintiff testified: Both the tractor and trailer lights on his truck and the truck preceding him were on. His tractor lights were on "low"; he did not know the position of the front lights on the truck in front of him. After passing under the railroad overpass and as he was proceeding on the straightaway toward the curve, he saw defendants' oncoming car strike the guardrail, which was 7 or 8 feet to the right of Stewart's side of the paved portion of the highway. Defendants' car immediately skidded over to plaintiff's side of the road into the path of his truck. When plaintiff saw defendants' car strike the guardrail and start across the highway, plaintiff tried to get off the highway and onto the shoulder to his right, but there was not sufficient time for him to do more than to get the tractor partially upon the shoulder. As plaintiff drove under the railroad, he was traveling at 15 miles per hour and as he drove along the straightaway at 20 to 25 miles per hour. Plaintiff did not see defendants' car until it had passed the preceding truck and did not know whether he could have seen it sooner, as he was not watching that far down the road. When plaintiff first saw defendants' car, it was not much further "than from here to the benches over there"—which distance, defendants' counsel says, was approximately 30 feet. Plaintiff's estimate of the speed of defendants' car, based upon the brief observation he had of it, was 35 miles per hour.

Although plaintiff's petition alleged specific primary negligence on the part of defendant Stewart in (1) failing to keep a proper lookout, (2) failing to keep his automobile under proper control, (3) operation of it "so as to cross over the center line of said highway", and (4) at an excessive rate of speed, he elected to go to the jury upon the sole submission set forth in Instruction No. 1. The negligence submitted in that instruction was: " * * * that the defendants herein did drive and propel the said Ford automobile * * * across and onto the wrong side of the road and directly into the path of the vehicle being operated by plaintiff, Ray Karch, and * * * that * * * as a result of defendants' negligence in operating the said automobile into, across and onto the wrong side of the highway a collision resulted and * * * that * * * plaintiff was in the exercise of reasonable care for his own safety and * * * that plaintiff as a result of said collision was injured, * * * then * * * your verdict should be in favor of the plaintiff * * * and against the defendants * *."

Hence, it is clear that at the election of plaintiff neither the alleged failure on the part of defendant Stewart to keep a proper lookout, nor his alleged failure to keep the automobile under control, nor his alleged excessive speed was submitted to the jury. That being the situation, we are primarily concerned, in the consideration of defendants' contention that no submissible case of defendants' negligence was made, with the

question of whether the evidence warranted submission of defendants' negligence in that, as stated in the instruction, Stewart "did drive and propel the said Ford automobile * * * across and onto the wrong side of the road and directly into the path" of plaintiff's truck.

Defendants say that, construed in the light most favorable to plaintiff, the evidence shows at most that the blinding lights of the leading truck caused Stewart to drive defendants' car off the pavement and to strike the guardrail, forcing the car out of Stewart's control, so that he could no longer purposefully steer it across the highway in front of plaintiff's truck; and that such evidence does not warrant a finding that defendant Stewart "did drive and propel the said Ford automobile * * * across and onto the wrong side of the road."

■ The evidence in behalf of both parties is that defendants' car *skidded* across the highway and into the path of plaintiff's truck. Now, it is true, as defendants contend, that the mere skidding of an automobile, in and of itself, does not constitute negligence. Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876. But that rule applies only where the evidence shows that the skidding is the sole factual cause of the occurrence. Rodefeld v. St. Louis Public Service Co., Mo., 275 S.W.2d 256, 258; Statler v. St. Louis Public Service Co., Mo. App., 300 S.W.2d 831, 834. The admitted fact, as testified by plaintiff as well as by Stewart, that defendants' car *skidded* across the highway, in and of itself, indicates that the course of the car, as it skidded across the highway, was not under the control of defendant Stewart. Hence, the basic issue is, not whether Stewart negligently drove and propelled the car across the highway, but whether he negligently operated it so as to cause the skid which carric it across the highway and into the path of plaintiff's truck.

In the instant case, there is no evidence as to the cause of the skidding other than that of defendant Stewart. We cannot agree, however, with defendants as to the construction to be placed upon his testimony. We may, and for the purpose of this opinion do, accept as true Stewart's testimony that the lights of the leading truck so blinded him as to cause him to drive his car off the paved portion of the highway. But that fact, taken in connection with his further testimony, does not necessarily establish that the skidding which thereafter ensued was proximately caused solely by the blinding lights. His further testimony that he was traveling 25 to 30 miles an hour when blinded by the leading truck lights and that when he "felt" the right front wheel of his car go off the pavement and saw that he was about to strike the guardrail, *he turned his steering wheel sharply to the left to get back on the pavement and applied his brakes,* following which the rear end of his car "slew on the gravel", hit the guardrail and skidded across the highway must be considered in determining whether the skid was caused, in whole or in part, by his failure to exercise due care.

■ In the case of Rafferty v. Levy, Mo.App., 153 S.W.2d 765, loc. cit. 769, the court had under consideration a situation analogous to that here presented, in which it said: "It was the driver of the truck who turned the steering wheel which caused the truck to be violently forced from its position in the eastbound street car tracks into the path of the car in which plaintiff was riding as a passenger. He attempted this at a time when the truck was traveling 18 or 20 miles per hour. Under the circumstances then and there existing, a jury might very well say that this was negligence, and that the resulting skid or loss of control was not an independent intervening agency which relieved the defendants of all responsibility for the resultant injuries to plaintiff." See, also, Triplett v. Beeler, Mo., 268 S.W.2d 814, 817; Rodefeld v. St. Louis Public Service Co., Mo., 275 S.W.2d 256, 259. We are convinced and must hold that, considered

in · its entirety, defendant Stewart's testimony would support a finding that the loss of control of his car and its skidding across the highway was due to negligence in its operation and that such negligence was a proximate cause of the collision. But, in so holding, we do not mean that, as contended by plaintiff, such testimony convicts Stewart of negligence as a matter of law, which contention we shall hereinafter discuss.

■ Defendants further contend, and correctly so, that inasmuch as plaintiff's alleged cause of action arose under and is controlled by the substantive law of Illinois he must not only plead (as he did) and submit in his verdict-directing instruction (as he did), but he was also required to prove his freedom from any negligence directly contributing to his injuries. Gerhard v. Terminal Railroad Association, Mo., 299 S.W.2d 866, 870; O'Leary v. Illinois Terminal Railroad Co., Mo., 299 S. W.2d 873, 879. And they further insist that he failed to prove that essential element of his case. Their argument runs this wise: The collision took place near the city limits of Edwardsville, but outside the business and residential districts; plaintiff was driving at 20 to 25 miles per hour within 100 to 150 feet of a preceding truck, without keeping a lookout ahead; he first saw defendants' car when it was 30 feet from him; the 1957 Revised Statutes of Illinois, State Bar Association Edition, Chapter 95½, § 211(b) par. (1), provides that the brakes on his truck must be sufficient to stop the truck on level highway in 30 feet, at a speed of 20 miles per hour: Chapter 95½, Art. VII, § 158, provides that his truck shall not follow within 300 feet of another vehicle while being driven outside a business or residence district; Chapter 95½, Art. I, Sub. III, § 113(a), defines "business district" as follows: "The territory of any city * * * contiguous to and including a highway when within any 600 feet along such highway there are buildings in use for business or industrial purposes, including but not limited to hotels, banks, or office buildings, railroad stations, and public buildings which occupy at least 300 feet of frontage on one side or 300 feet collectively on both sides of the highway"; and Chapter 95½, Art. I, Sub. III, § 113(b), defines "residence district" as follows: "The territory of any city * * * contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or more is in the main improved with residences or residences and buildings in use for business."

■ The difficulty with that argument is that there is no substantial evidence in the record to show that the point of collision was outside a business or residential district, as those districts are defined in the statute. Defendants say, however, that two photographs introduced in evidence by plaintiff, Exhibits 4 and 6, reveal that fact. In fact, they do not; they are pictures of certain points on the highway and reveal only a very limited area adjacent to the point in question. Certainly, we cannot ascertain from the view they afford whether the area of the collision was or was not within a business or residence district, as defined in the statute. In the absence of such evidence, we cannot say as a matter of law that plaintiff failed to exercise due care in following the leading truck at a distance of from 100 to 150 feet. Furthermore, in view of the evidence, we think we are not justified in holding as a matter of law that plaintiff, in the exercise of reasonable care, could and should have seen defendants' automobile before it had passed the leading truck or that plaintiff could and should have brought his truck to a stop before colliding with defendants' car. The collision occurred at night, upon a curve. We are not advised as to the view which the leading truck would permit of defendants' car as the latter · came around the outside of the curve before passing the leading truck; nor can we say as a matter of law that plaintiff, upon first sight of defendants'

car, in the exercise of due care, could and should have anticipated that it might pursue the course it did pursue; or that, after becoming aware that it might come into his path, plaintiff could and should have been able to react to that knowledge in time to have stopped his truck and averted the collision. These questions essentially were matters for the jury. The contentions above discussed must be denied.

Defendants' next contention is that plaintiff's submission instruction (No. 1, above set forth) was prejudicial in taking from the jury the right to determine defendants' negligence by assuming their negligence as a matter of law, in that, after hypothesizing a finding that defendants "did drive and propel" their car across the highway and into the path of plaintiff's truck, it hypothesized the further finding "that * * * as a result of defendants' negligence in operating the said automobile * * * onto the wrong side of the highway a collision resulted * * *", etc. Plaintiff, on the other hand, strenuously insists that the testimony of defendant Stewart to the effect he turned the wheel of his car sharply to the left and applied his brakes bespeaks negligence as a matter of law. In support of that contention, he cites: Sullivan v. Kansas City Public Service Co., 363 Mo. 68, 248 S.W.2d 605; Block v. Rackers, Mo., 256 S.W.2d 760; Happy v. Blanton, Mo., 303 S.W.2d 633; Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748; Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015. Suffice to say that neither of the cases cited supports plaintiff's contention that Stewart's testimony convicts defendants of negligence as a matter of law. For the reasons hereinabove stated in connection with defendants' contention that no submissible issue of defendants' negligence was shown by the evidence, we hold that, under the facts of this case, the issue of Stewart's negligence in causing the car to go across the pavement was a question for the jury.

■ Instruction No. 1, however, went much further; it specifically assumed that the bald fact of operation of defendants' car "across and onto the wrong side of the highway", if found to be the fact, was negligence. In so declaring, the instruction not only injected a false issue into the case but it also took from the jury its exclusive function of determining whether Stewart was negligent in causing defendants' car to skid, which, certainly, was an essential element of plaintiff's right to recover. In so instructing the jury, the court prejudiced the rights of defendants. Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, 1051; Glowacki v. Holste, Mo., 295 S.W.2d 135, 139.

Neither was the error cured by the giving of Instruction No. 3 in behalf of defendants, as further contended by plaintiff. Instruction No. 3 directed the jury that "the fact that the automobile driven by defendant Stewart skidded out of control * * * is not evidence of negligence on defendant's part, and you cannot find for plaintiff unless you further find that [it] was caused to so skid as a direct result of some act of negligence on the part of defendant Stewart submitted to you in other instructions of the court." Instruction No. 1, by assuming that the specific facts under which plaintiff submitted his case constituted negligence, thereby brought the two instructions into conflict. (It should be here noted that in quoting from Instruction No. 3, we are not to be understood as approving it. That question is not before us. We are merely taking note of plaintiff's contention that it cured any error in Instruction No. 1.)

■ The conclusion above reached presents the further question: Should the judgment be reversed outright, as contended by defendants, or should it be reversed and the cause remanded for a new trial? Defendants insist that since plaintiff, as a matter of strategy, abandoned all of the specifications of negligence pleaded in his petition, except the one submitted, and that he failed to make a case on that issue, the judgment should be reversed outright, cit-

ing: Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835; Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, 741; Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692, 696. Those cases were correctly ruled under the facts there presented, but we do not think them controlling in the instant case. The specification of negligence set forth in the petition and under which, it is clear, plaintiff undertook to submit his case, reads as follows: "That defendants so negligently * * * operated and propelled [defendants' car] so as to cross over the center line of said highway and collide with" plaintiff's truck. As stated, we have held the evidence most favorable to plaintiff showed that Stewart did not *drive and propel* defendants' car so as to cross over the center line of the highway, but, as we have further held, a jury reasonably could find that he did negligently *operate* the car in such a manner as to cause it to *skid* across the highway. And, we think that the specification of negligence set forth in the petition reasonably may be said to support a finding, if properly hypothesized, that, in turning the car sharply to the left and applying the brakes, defendant Stewart did negligently operate the car so as to cause it to skid across the highway. The vice of the instruction, in this respect, was that it submitted a fact situation not within the limitations of the evidence upon which plaintiff was entitled to seek recovery. So concluding, we are constrained to hold that plaintiff should not be denied a new trial of his case because of his misconception of the precisely limited state of facts upon which he was entitled to go to the jury under the foregoing specification of negligence, as developed by the evidence. We therefore, turn to consideration of another assignment of error that may affect a retrial of the cause.

Defendants contend that the court erred in refusing their proffered Instruction "D", which hypothesized a finding of facts, as detailed in the testimony of defendant Stewart, as the "sole cause" of the skidding of his car into the path of plaintiff's truck and that the skidding was not caused by any act of negligence on the part of Stewart submitted in the other instructions, and directed a verdict in favor of defendants, if the jury so found. Plaintiff makes no complaint of the form of the instruction, but merely insists that Stewart's testimony that "I turned my wheel sharply to the left to get back on the road and applied the brakes at the same time" constituted an admission that he was negligent as a matter of law; and that Stewart was guilty of negligence which, at least, contributed to the collision. We have heretofore adversely disposed of plaintiff's contention in that respect. However, as the case must be reversed and remanded for the error in the giving of Instruction No. 1, and it seeming highly probable that additional evidence may be adduced at any future trial, it would be unwise for us here to state unequivocally that a "sole cause" instruction should be given or that the form of the proffered instruction would be sufficient under evidence that may be adduced in any future trial. The requisites and propriety of "sole cause" instructions are set forth in the case of Happy v. Blanton, Mo., 303 S.W.2d 633, 637, and cases therein cited. Those cases may profitably be considered in determining the propriety and requisites of a "sole cause" instruction at any retrial, in the light of the evidence there adduced.

The possibility of repetition of other alleged errors relating to the admission of evidence and prejudicial argument at any future trial is so slight as to make it unnecessary to consider them.

For the reasons stated, the judgment is reversed and the cause remanded.

All concur.