Leo WRAY, (Plaintiff) Respondent,

v.

Theodore Mills KING and Justin Allen Moore, Defendants,

Theodore Mills King, (Defendant) Appellant.

No. 31732.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1965.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendant-appellant Theodore Mills King.

Dearing, Richeson, Weier & Roberts, H. L. C. Weier, Hillsboro, for defendant Justin Allen Moore.

Dorsey & Aulbert, Gerard Dorsey, St. Louis, David L. Colson, Farmington, William L. Mason, Jr., St. Louis, for plaintiff-respondent.

L. F. COTTEY, Special Judge.

Plaintiff sued Moore (the driver of a vehicle in which he was riding as a passenger) and King (the operator of a second vehicle) for damages for personal injuries suffered by him when the two collided. He recovered a judgment against King; the jury exonerated Moore. On this appeal by the losing defendant the decisive question is whether plaintiff's verdict-directing instruction was prejudicially erroneous because it ignored the possibility that the accident was caused by the non-negligent skidding and sliding of defendant's automobile on the icy highway. To determine whether that possibility had a factual basis we look only to the evidence offered by plaintiff on the subject, including those portions of both defendants' depositions which plaintiff read in evidence as admissions against interest. From that evidence this picture of the accident emerges.

At about "a quarter till 7:00" on a "chilly" December morning plaintiff was traveling from Flat River to his home in Millcreek in a pick-up truck driven by the exonerated defendant, Moore. Their route took them in a generally southerly direction over U.S. Highway 67, "a concrete road" two lanes wide, or "approximately 20 feet." "There was a fog" that morning, "but you could see" for a distance of "five, six hundred feet." "The highway was wet"—"you know how a heavy fog will make the highway damp"—and the temperature was "maybe 31, it was freezing;" but neither plaintiff nor his driver noticed "any precipitation in the air, rain, sleet, snow," nor "any ice anywhere, either on the pavement or off the pavement" prior to the accident. Plaintiff's driver "suspicioned that there was ice on the highway," however, although at no time had he experienced any "difficulty with traction" or "any sliding or skidding" in the operation of his truck.

At a point on the highway "near the Kollmeyer farm" the road slopes upgrade to the north—"I'd say upgrade"—and curves or bends "to the left." As plaintiff en-

tered that curve from the north, traveling uphill at a speed of "35 to 40 miles an hour," he observed defendant's automobile coming down the grade "four to five hundred feet away" and entering the curve from the south at "between 55, 60 miles an hour." He watched it from the time he "first saw it up until the time of the collision." He noticed no "application of brakes or slacking of the speed" of defendant's automobile as it approached. It was on its own side of the road when he first observed it, "just about like a feller drivin' on the highway in their own lane," and it stayed in its own lane until it was about "55, 60 feet" from the truck, when "all of a sudden it turned sideways." "The back end of his car left, swerved over into our lane * * * swerved around in our lane in front of us" and " * * * it slid down the highway towards us after it swerved around." "Four or five feet of" the rear portion of defendant's automobile thus protruded into plaintiff's lane of traffic; but the front portion of the automobile "was still on, over in his lane." Defendant's automobile slid "sideways;" it "was coming down there normally" until "just all of a sudden it was across the road * * * and then it just continued sliding sideways right down until the time of the collision." There was no further explanation of the incident. Defendant's automobile "was in perfect condition;" its brakes were "good"; its tires "were practically new."

Promptly after the collision plaintiff's driver got out of his truck and "discovered there was a thin coating of ice on there and slick." Plaintiff regained consciousness at the scene of the accident some "two and a half hours" after the collision and at that time observed that "the road was icy"; he "noticed ice there," but he "didn't notice any ice before."

In the light of those facts, gathered as we have said exclusively from evidence introduced by plaintiff, it seems hardly worthwhile to notice plaintiff's present insistence that " * * * there was no evidence in the case that skidding caused defendant's auto-

mobile to move to the left of the center of the roadway; if there was any such evidence in the case, it did not come in plaintiff's case, and was a matter for defensive instruction only."

Plaintiff's verdict-directing instruction made no reference to the slippery condition of the highway or to the sliding action of defendant's automobile. It submitted simply and solely that defendant " * * * failed to drive on the right half or east half of said road and highway, but instead went onto the left side or west half of said road and highway and came into collision with the motor truck * * *" in which plaintiff was riding. Clearly plaintiff's evidence established a factual basis for the possibility that that maneuver was caused by the non-negligent skidding and sliding of defendant's automobile on the icy pavement; and clearly plaintiff's main instruction ignored that possibility. The omission is fatal.

 It is too well settled to admit of doubt that a submissible case cannot be made by proof that defendant's automobile merely skidded or slid into collision with plaintiff's vehicle on the highway, for such a mishap (so the courts hold) may as readily be caused by circumstances beyond defendant's control as by his negligence; hence no inference of negligence arises upon such a showing. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W. 2d 59, 63; Evans v. Colombo, Mo., 319 S.W.2d 549, 550; Evans v. Colombo, Mo. App., 311 S.W.2d 141, 144; Karch v. Stewart, Mo., 315 S.W.2d 131, 135; Doyle v. Wilmesherrer, Mo., 358 S.W.2d 837, 840. Where the evidence of the skidding is confined to the defendant's case, as where he offers it to explain and excuse the accident, it is unnecessary for plaintiff's verdict-directing instruction to make reference to it, because plaintiff is under no duty to hypothesize or otherwise notice defensive or exculpatory evidence introduced by his adversary (although, of course, he may not so frame his instructions as to preclude the

jury's consideration of it when properly submitted in defendant's own instructions). Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1021; Murray v. St. Louis Wire & Iron Co., Mo.App., 238 S.W. 836, 839; Evans v. Colombo, Mo.App., 311 S.W. 2d 141, 144. But where evidence of the skidding gets into the record as part of plaintiff's own case, he may not ignore it, because, by doing so, he must necessarily *assume* in his instruction that defendant was *in control* of the automobile and was consequently responsible for its maneuvers —a thing which the evidence of its skidding tends to refute, or at least to relegate to the realm of speculation and conjecture.

The result to which these considerations lead in this case (as in all others where evidence of the skidding is adduced as a part of plaintiff's case), and the reasoning by which that result is justified, may be demonstrated in four successive steps:

■ (1st) The *real* issue is *not* whether defendant "failed to drive on the right half" of the roadway and "instead went onto the left side," but whether he was *negligent* in doing so. "The proximate cause of the collision is to be found in the *cause of the skidding.*" (Italics added). Evans v. Colombo, Mo.App., 311 S.W.2d 1. c. 145. That is the "basic issue." Karch v. Stewart, supra, 315 S.W.2d 1. c. 135.

■ (2nd) If defendant was in control of his car at the time it "went onto the left side" of the highway—that is, if he *drove* or *operated* it across the centerline—of course he was negligent. Sec. 304.015(2) V. A.M.S. But if the rear end of his car skidded laterally across the centerline on the icy pavement, and the car continued to slide forward in a sideways position into collision with plaintiff's vehicle, it is obvious he was not in control of it, because automobiles are not so constructed as to make possible their controlled operation in that manner. Doyle v. Wilmesherrer, supra, 358 S.W.2d 841.

■ (3rd) But the unexplained skidding of defendant's car out of control does not, ipso facto, exculpate him. That fact has been said to give rise to an inference that "is merely ambiguous," Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W.2d 418, 423, or to "two inferences, one of which would support a verdict for plaintiff and the other not," Evans v. Colombo, Mo.App., 311 S.W.2d 1. c. 145. To avoid the possible anomaly of allowing contradictory inferences to be drawn from the same fact we prefer (and believe it is just as accurate) to say that the skidding of defendant's car, standing alone, gives rise to no inference at all. It simply leaves open the question of negligence or no negligence. It furnishes no guide by which that question can be answered one way or the other, but leaves the issue to speculation and conjecture. If the jury is to resolve it intelligently, the additional information suggested by this query must be supplied: Did the defendant, immediately prior to the collision, operate his automobile in such a negligent manner as to cause it to go into a slide and out of control? When the facts developed by that inquiry are analyzed it will be found that in a two-car collision case (to which the res ipsa loquitur doctrine is not applicable, State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S.W.2d 4, 5) there are but two courses open to plaintiff:

(a) He may elect to submit defendant's negligence in *causing the car to go out of control* as a ground of recovery. In that event, of course, his verdict-directing instruction must hypothesize the facts that support that theory. Branch v. Gordon's Transports, Inc., supra, 375 S.W.2d 424.

(b) He may elect *not* to submit on that theory but on some other, as, for instance, "failing to drive on the right half or east half of said road;" but in that event he may not ignore his own evidence as to the car's skidding or sliding, for that is the evidence "upon which the submission of negligence must be premised," Doyle v. Wilmesherrer, supra, 358 S.W.2d 841. In Branch v. Gordon's Transports, Inc., supra,

375 S.W.2d 1. c. 421, the court, supporting that conclusion with a number of authorities, said, "In our view, this question must be examined in the light of those cases which hold that if, in the process of making a prima facie case or in proving conduct which would ordinarily constitute negligence per se, the plaintiff adduces evidence which tends to show an accidental or non-negligent cause, or a matter which would exonerate the defendant, then the plaintiff's verdict-directing instruction may not ignore the evidence which tends to excuse the defendant, but must hypothesize the possibly non-negligent causes or exculpatory facts and require the jury to find that the defendant's conduct was in fact negligent. Otherwise, the verdict-directing instruction is said to be erroneous as ignoring the real issue, or excluding it from the jury's consideration." Plaintiff must, in other words, hypothesize enough of the attendant facts and circumstances to warrant the jury in finding that the skidding of defendant's car out of control was itself the result of some antecedent negligence on defendant's part, and hence not a legitimate excuse for the accident.

■ (4th) And where, as in this case, he follows neither of those courses, but submits simply that defendant failed to drive on the right half of the roadway (which fact is conceded), and does not inform the jury of the exculpatory effect of a non-negligent skid (which fact is ignored), his verdict-directing instruction will be condemned for the several reasons assigned in Evans v. Colombo, Mo., 319 S.W. 2d 1. c. 552; Kitchen v. Pratt, Mo.App., 324 S.W.2d 779, 784–785; and Doyle v. Wilmesherrer, supra, 358 S.W.2d 841. The vice of the instruction is two-fold: (a) It assumes, as a fact implicit in the word "drive," that defendant was in control of his car and hence responsible for its failure to remain on the right half of the roadway, thus predicating his negligence on the mere fact that it failed to remain there; and (b), since that false issue is based on uncontradicted evidence that defendant's car did leave the right half of the roadway and cross into the left lane, the instruction effectively forecloses any possibility that the jury would exculpate him by finding that a non-negligent skid was the real cause of the accident. The effect of such an instruction, reduced to inelegant metaphor, is to set defendant in a game where the cards are stacked against him.

■ Confronted with that situation, defendant did what he could. He requested and received Instruction No. 4 which told the jury that if he was in the exercise of the highest degree of care at all times, and that notwithstanding such care his "automobile slid and skidded out of control across the centerline of Highway 67 and into collision with the truck" in which plaintiff was riding, and that defendant "was unable to avoid the collision after his car began to slide and skid," then he should be exonerated. Plaintiff says this instruction supplied the deficiencies of his own. We cannot agree. The same situation arose, and the same contention was made, in Karch v. Stewart, supra, 315 S.W.2d 137, where it was held that the two instructions were in conflict and the error in the first could not be cured by the giving of the second.

■ Upon the giving of Instruction No. 4, plaintiff countered with Instruction No. 5. It told the jury that if defendant drove "at a speed of from 55 to 60 miles per hour * * * out of a curve * * * on a downgrade * * * and on an icy road * * *," and if he was negligent in doing so and the skid was caused thereby, then "* * * such skidding, if any, is no *defense* to plaintiff's cause of action." (Italics added). Plaintiff insists that this instruction sufficiently covered the skidding phase of the case and cured any error in his main instruction. Again, we cannot agree. It was not a verdict-directing instruction. It only purported to counter a "defense" to plaintiff's cause of action; and it thereby illuminates and emphasizes the specious character of the issue actually sub-

mitted by the verdict-directing instruction. This, because skidding is not a "defense" in these cases; it is a circumstance tending to show that plaintiff never had a cause of action in the first place. When the skidding is established by plaintiff's own evidence he must explain it away, else his proof is ambiguous and his cause doubtful; and he may not submit on an equivocal showing that puts the outcome of the case at the hazard of the jury's caprice. To the extent that the instructions treated the issue of skidding as a defense, then, they tended to shift the burden of proof from plaintiff to defendant, and the jury's confusion was thrice confounded.

The judgment must be reversed for the reasons given; but inasmuch as the record discloses that plaintiff can in all probability make a submissible case on the "basic issue," the cause should be remanded for a new trial in line with the policy followed in most of the cases cited herein. It is so ordered.

WOLFE, Acting P. J., and ANDERSON, J., concur.