Mary GASS, Respondent,

v.

Harry S. BOBBITT, Appellant.

No. 24221.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1965.

William H. Sanders, Dean F. Arnold, Donald L. Dorei, Kansas City, Caldwell, Blackwell, Sanders & Matheny, Kansas City, of counsel, for appellant.

Arthur J. Kase, Rubins, Kase & Rubins, Kansas City, for respondent.

DAVID R. CLEVENGER, Special Judge.

This is an action for damages for personal injuries sustained by plaintiff Mary M. Gass when a car in which she was riding as a passenger was struck in the rear by an automobile driven by the defendant, Harry S. Bobbitt. The case was tried to a jury and resulted in a verdict and judgment in favor of plaintiff in the sum of $13,500.00. Defendant appeals.

Defendant's assignments of error are directed to Instruction No. 1, to the trial court's denial of an offer of proof, and to the amount of the verdict.

The automobile collision in controversy occurred at approximately 2:15 o'clock on the afternoon of July 24, 1962. Plaintiff was riding in the front seat of a car being driven by her husband. As the car was northbound on Belmont Road, in Kansas City, Missouri, it was struck from the rear by a car being driven by the defendant. That collision caused the Gass car in turn to collide with the rear end of a car directly in front of it.

It was plaintiff's testimony that the accident occurred just north of the Montgomery Ward store, where the family had been shopping; that, at the time of the collision, she heard "the squeal of the brakes", followed by the impact; and that it was all she could do to keep from being thrown through the windshield by the collision.

Plaintiff's husband testified that the car directly in front of him was traveling in its right-hand lane at approximately the same speed as his car, ten or fifteen miles an hour, at the time of the collision; and that, as a result of the impact, his son, who was riding in the back seat, was thrown forward with such force as to break the front seat loose, and the plaintiff was thereby thrown forward against the instrument panel.

A police officer arrived at the scene of the accident some thirty minutes after the collision, and investigated the occurrence. Defendant made a statement to the officer that he was traveling at approximately thirty miles per hour just previous to the accident, and that when his car was some thirty or thirty-five feet away from the Gass vehicle he observed it, attempted to avoid a collision, but could not do so. He stated that the pavement was wet and that his speed at the time of impact was twenty miles per hour.

The investigating officer testified that he measured thirty-three feet of skid marks laid down by defendant's car to the point of impact, and that, at the time of his observation, the street was dry.

Plaintiff's petition charged that the defendant "negligently and carelessly drove and operated his automobile in the same lane of traffic and behind the automobile in which she was a passenger so as to cause the same to overtake and run into and collide with the rear end of the automobile in which she was riding". Defendant's answer was a general denial, coupled with an allegation of contributory negligence. The defendant offered no proof as to his charge of contributory negligence, nor any instruction thereon.

▇ It is our opinion that the proof adduced by plaintiff supported the allegations of her petition above quoted, which amount to a charge of a specific act of negligence on the part of the defendant in the operation of his car. In so doing, plaintiff brings her case well within the rule of

the "rear-end collision doctrine". Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; Coit v. Bentz, Mo.Sup., 348 S.W.2d 941.

The courts in this state have long been committed to the rear-end collision doctrine. See Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360 and Witherspoon v. Guttierez, Mo.Sup., 327 S.W.2d 874. In the Hughes case the court defined this doctrine as the "rule of law" that recognizes:

"* * * if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle."

This "doctrine" as above stated was applied and re-affirmed in the Witherspoon case.

The Supreme Court, again further considering this doctrine, held that a case, properly submissible and submitted under the rear-end collision doctrine, is regarded as a submission of specific negligence. State ex rel. Spears v. McCullen et al., 357 Mo. 686, loc. cit. 691, 210 S.W.2d 68, loc. cit. 70(2); Gooch v. Lake, Mo.Sup., 327 S.W.2d 132. This court, in commenting upon the rear-end collision doctrine, held as follows in Croney v. Pence, Mo.App., 346 S.W.2d 574, loc. cit. 577:

"It is negligence for the operator of an automobile upon the public highways of this state, following another automobile proceeding in the same direction, to allow and permit the front of his automobile to come into violent contact and collision with the rear end of an automobile in front of him. The

statement of these specific facts, accompanied by a charge of negligence, constitutes a charge of specific negligence".

■ In his first point, defendant takes the position that plaintiff's evidence injected the question of skidding into the case and that consequently she was then compelled to hypothesize such fact of skidding in her verdict-directing Instruction No. 1. We do not agree with this contention. When a plaintiff has made a prima facie case and submits it without reference to evidence of skidding which may have appeared in the case, any issue arising from the fact of skidding would then be a matter of defense. The burden of proving that defendant was legally exculpated from the negligence charged against him, by reason of the fact that his vehicle skidded, rested upon the defendant. And, of course, the fact of skidding, being a matter of defense, it further follows that it would be incumbent upon the defendant to offer an instruction in support of such defense. The defendant did not take the stand, nor did he offer any proof whatsoever as to skidding or any other defense. He offered no other fact or circumstance excusing his otherwise negligent act. He relied solely on the plaintiff's evidence of skidding and the plaintiff's omission to hypothesize such fact in her Instruction No. 1. We must and do rule here that a case properly submitted under the rear-end collision doctrine is a submission of specific negligence, and that the plaintiff has, under said doctrine, made a prima facie case. Under these circumstances, the defendant to prevail must of necessity offer some defense or take advantage of plaintiff's evidence in his favor by instruction. Defendant did neither.

The defendant, in support of Point I, insists that the case, Wray v. King, Mo.App., 385 S.W.2d 831, presented a skidding situation similar to that appearing in this case. Our examination of the cited case, however, discloses that the skidding there shown was *across the center line* and into collision

with plaintiff, and that the cars involved were traveling in opposite directions. Therefore, the Wray case is distinguishable because in it there was no overtaking and striking of plaintiff by the defendant. The court there was certainly justified in ruling that the facts shown failed to meet the test of the rear-end collision doctrine. Likewise, under the facts in the Wray case, it was proper for the court to hold, as it did, that where plaintiff's case includes evidence of skidding by defendant's automobile, plaintiff may not ignore "skidding" in his instructions. Again, we emphasize that the Wray case was not submitted under the rear-end collision doctrine, that it was not submitted under facts analogous to the instant case, and is, therefore, not applicable as authority here.

The defendant further urges that the case of Karch v. Stewart, Mo.Sup., 315 S.W.2d 131, supports his position. An examination of this case discloses the facts to be that the defendant's car skidded across the highway into the path of plaintiff's oncoming truck. Therefore, we cannot agree that Karch v. Stewart, supra, or Wray v. King, supra, present facts analogous to the case at bar, as in each of those cases the cars were not traveling in the same direction but were being driven in opposite directions. A review by us of other cases, including Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, discloses that in none of these cases are the facts analogous to the case here, nor does defendant cite any case involving the question of skidding where the facts are in harmony with the case presented before us.

Having heretofore ruled that plaintiff's petition, being supported by competent evidence, under facts clearly within the rear-end collision doctrine, was properly submitted to the jury under plaintiff's verdict-directing Instruction No. 1, we, therefore, rule against defendant on this point.

Appellant next contends that the trial court erred in not permitting one of his witnesses, on redirect examination, to explain that a certain sign posted at or near the scene of the accident was for advisory purposes only and not to state the legal speed limit. The witness, Louis Medina, an employee of the Traffic Department of the City of Kansas City, testified on behalf of defendant that, according to ordinance, the legal speed limit at the scene of the accident was thirty-five miles per hour, even though there was a sign at or near such scene designating the speed limit to be twenty-five miles per hour. The appellant, upon being denied the right on redirect examination to elicit from the witness such explanation concerning the sign, properly made his offer of proof as to what the testimony of such witness would be, and the Court sustained the objection to the offer. In any event, the evidence was not admissible and the witness was not qualified to give or make the explanation.

The fact that the evidence before the jury was to the effect that, by city ordinance, the legal speed limit was thirty-five miles per hour and, it being undisputed, we do not believe the jury was either confused or misled in any way, by argument of counsel or otherwise, because of the reference to a sign of twenty-five miles per hour.

■ We note that there is no charge in plaintiff's petition as to excessive speed. Neither was there an offer by either party of an instruction as to the question of speed. We hold that the trial court did not commit error in refusing defendant's offer of proof.

Appellant's third point is a complaint that the amount of the verdict is excessive.

The plaintiff testified that immediately following the impact, she had pain in her neck, shoulders, right arm and low back. Upon arriving home, she called her family physician and, on his advice, she was admitted to the hospital, where she remained in traction for two days. Before leaving the hospital, she was fitted with a cervical brace which she wore for four or five months. She returned to the doctor's office

on numerous occasions, where she received heat treatments and shots. Plaintiff complained of severe headaches, back and shoulder pains, loss of strength in her hand, and of being unable to carry on her usual household duties. These conditions continued to the time of the trial.

Dr. Richard Craig, the treating physician, indicated some twenty-two office visits for treatment in 1962, with five intermittent treatments through January and February of 1963, and twelve office calls ·from June through December. Thereafter, at the doctor's office on eleven occasions, from January 18, 1964, to June 23, 1964, she received diathermy and ultrasonic treatments. Medication consisted of sedatives and tranquilizers.

The radiologist testified that the x-rays showed considerable persistent posterior bowing above the level of the fifth cervical vertebra, resulting in muscle spasm in the upper cervical area, which produced persistent contraction of the muscles.

Dr. Pickard, an orthopedic surgeon, appearing for plaintiff, testified that plaintiff's condition was the result of the accident and that she had disability to the neck, with tension of the cervical muscles, and some wasting of the right arm, which he attributed to the lack of use of said arm due to her condition.

Dr. Craig also testified that, in his opinion, her injury was the result of the accident; that x-rays showed a persistent posterior bowing above the level of C–5, creating an abnormal alignment of the vertebrae; and that, although there were no fractured or broken vertebrae, the injury did result in an abnormal alignment of the vertebrae because of persistent muscle spasm which caused her head to be held in a forward position. He prescribed demerol and empirin, with codeine, for pain, and phenobarbital to induce sleep at bedtime.

Dr. Pickard testified that there was no improvement in her condition between the examination made by him on November 30, 1962, and the examination made in October of 1963, and that the injury which she had sustained to her neck was permanent.

Plaintiff testified that, prior to the accident, ·the was capable of and did do her housework and considerable baking, but that after the accident she was unable to perform her usual household duties. This testimony was substantiated by several neighbors, some of whom testified that they observed her in pain and discomfort, and that she developed personality changes following the accident. These changes were evidenced by the fact that she had become withdrawn and despondent, and was no longer interested in or capable of participating in her former church and social activities.

■ Considering plaintiff's testimony, supported by the evidence of her neighbors concerning her condition, and the doctor's findings that she had sustained a permanent injury as a result of the accident, we rule that such evidence is sufficient to justify the jury's verdict in the amount of $13,500.00.

The judgment is affirmed.

All concur.