Richard JOKISCH, Plaintiff-Respondent,

v.

LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE, Defendant-Appellant.

No. 32740.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 18, 1968.

H. L. C. Weier, Dearing, Richeson, Weier & Roberts, Hillsboro, for appellant.

Earl R. Blackwell, Hillsboro, for respondent.

CLEMENS, Commissioner.

Plaintiff was southbound and defendant's collector-salesman Lawrence Langenecker was northbound on Highway 61–67 when Mr. Langenecker's car crossed the center line broadside into plaintiff's path. Plaintiff sued only the corporate defendant and it has appealed from plaintiff's $2,000 verdict and judgment.

The appeal brings up two sharp issues: Is the defendant liable for the alleged negligence of its collector-salesman while he was driving his own automobile on company business? And if the automobile was sliding sideways when it crossed the highway's center line, was it error to submit plaintiff's case under MAI 17.01–17.13 for *driving* on the wrong side of the road?

Defendant's first point concerns its relationship with Lawrence Langenecker. It contends that he was an independent contractor rather than its employee, that it had no right of control over Mr. Langenecker's operation of his automobile, and that it therefore is not liable under the doctrine of respondeat superior for his negligence. Since the defendant contends the trial court should have directed a verdict against the plaintiff because of this relationship, we relate the evidence on this issue in a light favorable to plaintiff.

Mr. Langenecker testified as plaintiff's witness. The defendant had insurance policies in force in Jefferson County. In

February of 1965, four months before the collision, the defendant employed Mr. Langenecker as its "agent", authorizing him to collect premiums in Jefferson County and to sell new policies anywhere in the state. A written employment contract set Mr. Langenecker's compensation on a straight commission basis for premiums collected and new policies written. It provided for payment of $10 a week as a "general expense allowance" and required him to account for his expenses regularly. This $10 allowance was paid to Mr. Langenecker weekly to cover his automobile expenses, and he made a weekly report of the number of miles driven. By the contract Mr. Langenecker agreed to "be bound by the rules and regulations of the Company as embodied in the Company's Rate Book and Rule Book, as heretofore and hereafter amended by Field Letters and Mirror notices." None of these documents referred to in the contract was introduced in evidence. By the contract Mr. Langenecker's employment could be terminated at any time by either party.

In making collections Mr. Langenecker covered Jefferson County every week. When he took over from another agent at the start of his employment, the company gave him what he called a "pay schedule," a book listing the company's policy holders in Jefferson County. The book was divided into sections, geographically and by days; each policy holder paid on a certain day of the week. The company's supervisor "suggested" that Mr. Langenecker make collections in that way. According to Mr. Langenecker, that was the way it had been set up and that was the easiest way to do it.

Mr. Langenecker made his collections in cash and in checks and money orders payable to the company. On Tuesday and Thursday mornings of each week he was required to go to the defendant's office to turn in his collections and to balance his books with the company's ledgers.

Mr. Langenecker's collision with plaintiff occurred on a Wednesday evening. The time and place jibed with his regular Wednesday route. He had just collected from one of defendant's policy holders and was on his way to collect from another. Thus, the collision occurred within the scope of his work for the defendant. As said, the defendant contends Mr. Langenecker was not its employee but was an independent contractor over whom it had no right of control in the operation of his automobile. This issue was submitted by MAI 13.06 requiring a finding that the defendant either controlled or had the right to control Mr. Langenecker's physical conduct.

We first note the principles governing our review. In deciding a similar issue in the case of Gardner v. Simmons, Mo., 370 S.W.2d 359[1–4], the Supreme Court ruled that in determining whether the salesman was an independent contractor— and, thus, that his employer was not liable under the doctrine of respondeat superior —the court is to consider the evidence and the reasonable inference to be drawn therefrom in the light most favorable to the injured plaintiff, and to disregard unfavorable and contrary evidence. The ruling further stated each case must depend on its own facts, and no single test considered alone is conclusive of the ultimate test: the right to control. Furthermore, whether or not the right of control existed in a particular case is ordinarily a question of fact for the jury.

In distinguishing between employees and independent contractors, Missouri courts have repeatedly adopted the definitions in Restatement of the Law of Agency, Second, § 2:

"(2) A servant [employee] is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do

something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. * * * "

In applying these definitions to cases like ours, "the right to control is more vitally important than the exercise of that right." Klaber v. Fidelity Bldg. Co., Mo.App., 19 S.W.2d 758, l.c. 762. The right to control is "the ultimate and decisive test." Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174[2–4]. The difficulty lies in applying the test. In the Klaber case, supra, the court adopted this statement from 31 Corpus Juris, 473, 474: " 'It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact.' "

■ The factors usually considered in drawing the line of distinction between an employee and an independent contractor are listed in Restatement of the Law of Agency, Second, § 220(2). Four factors there apply to the evidence here:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(h) whether or not the work is a part of the regular business of the employer;"

Before considering factor (a), "the ultimate and decisive test," we examine factors (e), (f) and (h).

■ Factor (e): Here the workman furnished his own automobile. The defendant, however, authorized him to use his car and paid him $10 a week for its operation. The factor of ownership, therefore, did not make Mr. Langenecker an independent contractor. Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S.W.2d 1049[3]. Factor (f): The defendant had the right to discharge Mr. Langenecker at any time. That fact indicates that the workman was an employee rather than an independent contractor. Wright v. McDaniel, 203 Ark. 992, 159 S.W.2d 737, 740, quoting 31 Corpus Juris 475. Factor (h): Mr. Langenecker was not engaged in an independent business, since collecting premiums was part of the regular business of the defendant insurance company. The fact that defendant used his services for that purpose detracts from its contention that he was an independent contractor. Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761[6,7]; and see 56 C.J.S. Master & Servant § 3(2), pp. 48–49. These three factors support the ultimate factor: defendant's *right* to control Mr. Langenecker's physical conduct in the performance of his services.

Factor (a): Two facts indicate that defendant did not give Mr. Langenecker free rein to choose his own means of work. The defendant "suggested" that he follow the established collection schedule whereby his territory was divided into certain accounts to be collected on certain days of the week. From this it could be inferred that the defendant told Mr. Langenecker not just what to do but also how to do it. More significant on this issue of right-of-control was the written contract with Mr. Langenecker. As said, it required him to comply with the company's rule book, "as heretofore and hereafter amended." We do not know what the rule book required of Mr. Langenecker, but the defendant's stated right to prescribe rules binding upon him is inconsistent with its contention that he was not subject to company control of his physical conduct in performing his

work. A similar situation appeared in the case of Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440. There, a salesman was hired under a contract that provided he "agrees to employ himself under direction of the said Singer Manufacturing Company, and under such rules and instructions as it, or its manager at Minneapolis, shall prescribe." In holding that under this contract the salesman was an employee rather than an independent contractor, the court said: " * * * and the company reserves to itself the right of prescribing and regulating, not only what business he shall do, but the manner in which he shall do it, and might, if it saw fit, instruct him what route to take, or even at what speed to drive."

We have considered the cases cited by the defendant: Reiling v. Missouri Ins. Co., 236 Mo.App. 164, 153 S.W.2d 79, 84; Douglas v. Natl. Life & Accident Ins. Co. of Nashville, Tenn., 236 Mo.App. 467, 155 S.W.2d 267; Pfeifer v. United Bakers Supply Co., Mo.App., 160 S.W.2d 795, 800; Usrey v. Dr. Pepper Bottling Co., Poplar Bluff, Mo.App., 385 S.W.2d 335, 339. Each is materially distinguishable. It would unduly prolong this opinion to compare the factual differences readily apparent in those cases. It is enough to say that in none of them did the employer, as here, specifically bind the employed person to comply with rules it might impose.

■ Under the verdict-consistent evidence here it was for the jury to say whether the defendant had the right to control the physical conduct of Lawrence Langenecker. The court properly denied the defendant's motion for a directed verdict. Having determined that the defendant was bound by Mr. Langenecker's conduct, we pass to the defendant's second point: that plaintiff's verdict-directing instruction erroneously hypothesized driving on the wrong side of the road when the evidence was that Mr. Langenecker slid onto the wrong side of the road.

The evidence about the collision came from plaintiff, his passengers and defendant's driver, and their testimony was consistent: Highway 61–67 has four lanes, and was wet. Plaintiff was southbound in his inner lane and defendant's driver was northbound in his own inner lane. Both cars were going about 40 m. p. h. When the cars were 200 to 300 feet apart, the Langenecker car began to "fishtail". Its rear end swung first to its right, into the outer lane, and then swung back to its left, across the center line, and came broadside into plaintiff's path. The front end of plaintiff's car collided with the left side of the Langenecker car. Plaintiff described it: "Well, first it fishtailed over, he was in the northbound lane, the inner northbound lane and he fishtailed into the outer northbound lane, then fishtailed over in my lane and come down my lane [sideways] and hit me." Similarly, defendant's driver said: "I lost control of my car and it fishtailed one way, came around broadside, into the other lane in front of his car."

Defendant challenges plaintiff's verdict-directing instruction, MAI 17.01–17.13:

"First, * * * [Langenecker's agency], and

"Second, Langenecker drove on the wrong side of the road, and

"Third, Langenecker was thereby negligent, and

"Fourth, * * * [resultant damage]."

The defendant argues that the instruction erroneously ignores the element of *skidding* and submits on *driving* onto the wrong side of the road, citing Evans v. Colombo, Mo. (banc), 319 S.W.2d 549, and Wray v. King, Mo.App., 385 S.W.2d 831. Plaintiff, responding to this challenge, seeks to justify the instruction on the sole ground that his evidence did not show the defendant's driver skidded—that no witness used the word "skid".

As used to describe automobile movements, Webster's Third New International

Dictionary (unabridged) defines the word "skid": "to fail to grip the roadway; *specif:* to slip sideways on the road (the truck *skidded* on the wet road)." According to Blashfield's Automobile Law and Practice, Third Edition, § 105.38: " 'Skidding' means that the wheels of a vehicle slip sideways, resulting in the inability of the driver to control the movement of the vehicle." (Citing Clodfelter v. Wells, 212 N.C. 823, 195 S.E. 11.) As said in Doyle v. Wilmesherrer, Mo., 358 S.W.2d 837[7]: "Trucks are not driven or guided sideways," and if they move in that direction it must appear that such movement was negligently caused. And see Wray v. King, supra, at 385 S.W.2d l.c. 833, where plaintiff's evidence showed defendant's car "turned sideways" and "slid down the highway toward us." The court declared it was "hardly worthwhile" to notice plaintiff's contention that there was no evidence of skidding.

We conclude, therefore, that the witnesses' descriptions of the movement of the Langenecker car do show, in legal contemplation, that it was skidding—even though they avoided using that word. So, plaintiff's verdict-director must stand or fall on the question of whether he erroneously submitted the issue of defendant's negligence on evidence that merely showed the Langenecker car skidded onto the wrong side of the road, without further evidence that defendant's driver negligently caused that skidding.

We stress the fact that here we are not concerned with an issue of submissibility; that point is not raised in defendant's brief. Instead, defendant's attack is limited to the propriety of plaintiff's verdict-directing instruction.

■ The Supreme Court adopted MAI 17.13 (the wrong-side-of-the-road instruction) in the light of its "Committee's Comment": "Where plaintiff seeks to recover because of defendant's presence on the wrong side of the road, and where defendant got in that position by skidding, it

should be remembered that mere skidding 'is not negligence and does not give rise to an inference of negligence.' [Citing cases.]" That principle has been embedded in our automotive law since this court's decision forty years ago in Heidt v. People's Motorbus Co. of St. Louis, 219 Mo.App. 683, 284 S.W. 840[2]. The rule applies when the evidence, as here, shows that skidding is the sole factual cause of the collision. See Karch v. Stewart, Mo., 315 S.W.2d 131[1], and cases there cited.

Two cases determine the issue here. The first is Evans v. Colombo, Mo. (banc), 319 S.W.2d 549. The court noted the principles that skidding in itself is not negligence and that no submissible case is made where skidding is the sole factual cause of a collision. The evidence there was that the plaintiff's car was stopped on the right-hand side of the street; the defendant's car, approaching from the opposite direction, spun around and skidded into plaintiff's lane. The court instructed the jury to find for plaintiff if the defendant drove across the center line and in doing so failed to exercise the highest degree of care. On appeal the court condemned this submission on the grounds "(a) that it completely ignores the admitted factual element of skidding and does not properly hypothesize the necessary facts; and (b) that it assumes that defendant *operated* 'her automobile across the center line,' thus excluding the possibility of an accidental or non-negligent skidding as the proximate cause."

The second case is Davis v. Werremeyer, Mo., 377 S.W.2d 319[2], a center-line skidding case. The court commented on the instruction given in Evans v. Colombo, supra, where the cause of crossing the center line was not submitted, and said: "Thus it enabled the jury to return a verdict for plaintiff if defendant's automobile crossed the center line and struck plaintiff's automobile, 'regardless of the reason for the crossing, whether excusable or inexcusable, without any consideration of the manner in which the crossing occurred (while

skidding) and without requiring the finding of any negligent act on the part of defendant which caused the skidding-crossing.' "

■ On the strength of those two cases we must rule here that plaintiff's MAI 17.01–17.13 submission is erroneous. This, because (1) it ignores the factual element of skidding and fails to hypothesize the essential ultimate facts of the cause of skidding, and (2) it assumes that defendant's driver operated his automobile onto the wrong side of the road, thus excluding the possibility of non-negligent skidding as the proximate cause. This requires a new trial.

■ Section 512.160(3), V.A.M.S., declares that no new trial shall be ordered as to issues in which no error appears. The defendant has raised no issue concerning the amount of plaintiff's verdict, so the damage issue need not be retried. Mullen v. St. Louis Public Service Co., Mo., 389 S.W.2d 838 [6]. The issue of defendant's responsibility for the conduct of its driver was properly tried below, and defendant's challenge to the sufficiency of the evidence on that issue has been denied here. Hence, the issue of agency need not be retried. Bramb-

lett v. Harlow, Mo.App., 75 S.W.2d 626 [17–18]; Brown v. Shield Fire Ins. Co., Mo.App., 260 S.W.2d 337 [3].

The judgment will be reversed and the cause remanded for trial on the sole issue of whether defendant's driver, Lawrence Langenecker, negligently caused plaintiff's injuries. The verdict in favor of plaintiff for $2,000 should be held in abeyance pending trial on the issue of the driver's liability.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause is remanded for trial on the sole issue of whether defendant's driver, Lawrence Langenecker, negligently caused plaintiff's injuries. The verdict in favor of plaintiff for $2,000 shall be held in abeyance pending trial on the issue of the driver's liability.

ANDERSON, P. J., WOLFE, J., and MICHAEL F. GODFREY, Special Judge, concur.