Eugene A. MOONEY and Ruth M. Mooney,
his Wife, Respondents,

v.

Samuel L. CANTER and Lillian R. Z. Canter, his Wife, Appellants.

No. 45971.

Supreme Court of Missouri,
Division No. 1.

March 10, 1958.

Ennis & Pannell, William L. Pannell, Festus, for appellants.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for respondents.

HOLLINGSWORTH, Presiding Judge.

This suit arose out of a dispute between plaintiffs and defendants as to the location of the boundary line between their adjoining tracts of land situate in a rough, wooded area of Jefferson County, Missouri. Plaintiffs' land lies to the east and defendants' land lies to the west of the line in controversy. Plaintiffs, alleging title to the strip of land in dispute by adverse possession for a period of more than ten years under the provisions of Section 516.-010 RSMo 1949, V.A.M.S., instituted this action in three counts: count one, to quiet their title; count two, for ejectment; and count three, to enjoin defendants from trespassing upon said tract. Defendants' answer (not entirely clear) admitted plaintiffs' possession of an undesignated portion of said tract, denied plaintiffs' possession of an undesignated portion and asserted their record title to an undesignated portion. The issue of plaintiffs' title by adverse possession to the strip in question was submitted to a jury and the counts in ejectment and for injunction were submitted to the court. Upon return of the jury's verdict finding title in plaintiffs, judgment was rendered in favor of plaintiffs on all three counts of their petition. Defendants have appealed, contending, in essence, that although plaintiffs pleaded title by adverse possession and their case was submitted and adjudged upon that theory, the evidence actually showed that plaintiffs claimed title only to their true boundary; that such evidence will not support a verdict and judgment based upon a plea of adverse possession; and that defendants' motion for a directed verdict should have been sustained. (Inasmuch as neither the plaintiff wife of plaintiff, Eugene A. Mooney, nor the defendant wife of defendant, Samuel L. Canter, participated in the trial, we shall, for convenience, frequently refer to Eugene A. Mooney as though he were the sole plaintiff and to Samuel L. Canter as though he were the sole defendant.)

In determining whether plaintiffs made a submissible case of title by adverse possession as pleaded in their petition and submitted to the jury under the instructions of the court, we accept the evidence most favorable to plaintiffs. See collected cases in Vol. 3, Part 1, Missouri Digest, Appeal and Error, ▪▪▪▪▪▪ Such evidence supports a finding of facts in substance as hereinafter set forth.

Plaintiffs' farm is described in their deed as "Lot Four (4) being the Southeast part of U. S. Survey No. 2138, * * containing 160 acres, less * * * 1½ acres which was reserved, * * *", etc. (The acreage reserved is not here involved.) The farm is generally described as being one-half mile in length north and south and one-half mile in width east and west. It was acquired by William Kleinschmidt in 1887. Following his death, it was owned by his heirs until it was conveyed to William C. Grass and Irene Grass, husband and wife, in 1943, who owned it until they conveyed it to plaintiffs on December 11, 1946. Defendants purchased their land to the west of the disputed tract from H. W. Dornan in 1949, who had acquired it in 1927.

The strip to which plaintiffs asserted title by adverse possession is 2,706 feet in its north and south length. It lies west of the Plattin-Flucom County Road (hereinafter referred to as the "road"). Its north, south and west boundaries are straight and form, approximately, the three sides of a rectangle, but, due to the winding course of the road forming its east boundary, the strip varies in width as the road winds. At its south end, which coincides with the south

line of Survey No. 2138, the strip is 750 feet in width, at its north end it is 460 feet in width, and at its narrowest point (approximately midway of its north-south length), it is about 150 feet in width. The road runs in a general north-south direction along and within the west boundary of the farm. An aerial map, introduced into evidence by agreement of the parties, shows that the road "bows" quite deeply (several hundred feet) to the west at a point beginning some 900 to 1200 feet north of plaintiffs' south boundary line. The westward bow thus made extends on northward for some 600 to 900 feet, at which point the road curves back to a north-easterly course until it crosses plaintiffs' north boundary. Plattin Creek, a meandering stream flowing in a general north-south direction, is west of the road. At the south boundary of plaintiffs' farm, the creek appears to be from 400 to 500 feet west of that road. Near the most western part of the bow in the road, the creek bed approaches and, apparently, for a short distance, encroaches beyond the boundary line asserted by plaintiffs. At the north line of plaintiffs' farm, the creek appears to be some 250 to 350 feet west of the road. The bow in the road produces V-shaped tracts of land between the road and the creek at the southwest and northwest corners of plaintiffs' farm. The south tract contains approximately four and one-half acres. The north tract contains approximately two acres. Between these tracts there are gravel bars and an area used for picnicking and parking automobiles.

There seems not to have been any actual dispute about the boundary until defendants acquired their title in 1949. It was the use of and profits derived from the gravel bars and picnic area, together with ingress and egress from the road thereto, that provoked this controversy. Prior to the time defendants acquired their land, plaintiffs, under claim of ownership, sold gravel from the bars and charged for picnicking and parking privileges. After defendants came to their farm, they undertook to avail themselves of these rights, to the exclusion of plaintiffs. It should be here noted, however, that Mr. Dornan, from whom defendants purchased their tract, testified in behalf of defendants that he was unable to state where he claimed the boundary to be. He, at first, said it ran along the *east* side of the creek. Later in his testimony he said that the southeast corner of defendants' farm was 250, possibly 200, feet west of the road and about 20 feet, as he remembered, *west* of the creek. The record does not establish with any degree of certainty the location of the line as either Mr. Dornan claimed or defendants now claim it to be.

Plaintiff Eugene A. Mooney testified that the southwest corner of the tract, as claimed by him, is marked by an old blue ash tree yet standing as a "witness tree" and that "there was a pile of rocks there at one time for a corner." That corner is 750 feet west of the road. A line run northward at right angles from that point for a distance of 2,706 feet marks the northwest corner of the tract claimed by plaintiff. That corner is 460 feet west of the road and is marked by two trees, an old black oak and a sycamore. The line between the "witness tree" at the southwest corner and the sycamore tree at the northwest corner constitutes the east boundary of the land that he has had in possession since he purchased from Mr. Grass in 1946. The west boundary line, as thus described by plaintiff, was outlined in red pencil on the aerial map and admitted into evidence.

On cross-examination, plaintiff testified:

"Q. Is that your testimony, Mr. Mooney, you own this property outlined on the map, do you own that by deed? A. I am testifying that outlined in red has been in possession since 1887, belonged to that farm.
" *     *     *     *     *     *

"Q. The land you claim has been in possession since 1887, are you claiming the land outlined in red is included in the deed to your property, the record title you now hold? A. Yes, sir, absolutely."

William C. Grass, from whom plaintiffs purchased the land in 1946, testified that the southwest corner of the tract, as he pointed it out to plaintiff on a plat at the time of sale, was about 750 feet west of the road and that the west boundary line of the tract extended northward from that point, and that he had always claimed to that line.

James H. LaPree farmed the land claimed by plaintiffs as a tenant of the Kleinschmidt heirs and their successors in title, Mr. and Mrs. Grass, from 1931 until after Christmas in 1945. A certain Mr. Harris made a survey of it. There was a corner west of the creek at the southwest end, at which there was a corner pile of stones, that was considered the line. At the north end, on the west bank of the creek, there was also a pile of stones marking that corner.

George H. Vaughan, aged 74 years, occupied the land owned by defendants for about 18 years, beginning in 1920. He helped to survey the tract in question on two occasions. The southwest corner of plaintiffs' farm is on the west side of the creek and the northwest corner is located by a big black oak tree and a sycamore standing by the side of it, west of the creek. Mr. Harris put rocks at the southwest corner. The line between those corners was always the boundary line between plaintiffs' and defendants' land and there was no dispute about it "until these late years." (It is clear from the entire record of the witness' testimony that he refers to the line claimed by plaintiffs to be the boundary line between the farms of plaintiffs and defendants.)

Defendants did not dispute plaintiffs' title to the four and one-half acre tract at the south end nor to the two acre tract at the north end. Mr. Canter testified that he never disputed plaintiffs' title to any land east of the creek. He claims, however, that defendants' southeast corner "is within 20 feet of the creek on the west side." He does not know exactly where plaintiffs' northwest corner is located, but he understood that plaintiffs had a survey run by Holt and "they showed me a line up by a sycamore tree." "The way the creek cuts it off it is about ten feet."

"Q. In this suit, Mr. Canter, Mr. Mooney is claiming some land 750 west of the Plattin Road at the south boundary. Part of that you agree is in his property as called for by his deed, is that right? A. That is right.

"Q. It is the rest of the property that you are disputing? A. That is right.

"Q. Does the same hold true on the north end? A. That is right.

"Q. As far as you are concerned the Plattin County Road at the south end and north end runs through Mr. Mooney's property, he owns property on both sides of the road? A. That is right."

As stated, defendants insist that the judgment rendered herein cannot stand, because, as their brief states, "when the plaintiff, Eugene A. Mooney, testified, he claimed the disputed land was included in the description contained in his deed. Therefore, he could not be holding possession which was adverse to himself. Such a position is ridiculous and untenable." Further, say defendants, "It is well settled that where a person is claiming land only to the true boundary and such is his intention, and that person is actually possessing land beyond the true boundary by mistake, 'his possession of a part of his neighbor's land included in the inclosure is not adverse.' Goltermann v. Schiermeyer, 111 Mo. 404, 19 S.W. 484, loc. cit. 487." Defendants also strongly rely upon and quote from Chostner v. Schrock, Mo., 252 S.W. 381, 382, wherein the court said: "Where possession is held to a supposed boundary line and the parties intend to claim only to the true line, wherever it might be, or to hold subject to future ascertainment, then the possession is not adverse and the statute will not run."

The fallacy of defendants' argument is that it misconstrues the real nature and

extent of plaintiffs' claim and their evidence in support thereof. First, it is clear (according to plaintiffs' evidence) that plaintiffs believe their deed was intended to and did include the strip in dispute. But, second, whether it did or did not, they further insist, as they pleaded and their evidence tends to show, that they and their predecessors in title have occupied and claimed as their own the strip in question for more than ten years.

■ As said in State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176–177: "The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. * * * One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership."

The doctrine therein announced has been consistently followed: Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544, 545–546; Peterson v. Harpst, Mo.Sup., 247 S.W.2d 663, 666–667; Agers v. Reynolds, Mo.Sup., 306 S.W.2d 506, 511–512.

■ So it is that regardless of whether plaintiffs are right or wrong in asserting that their record title includes the tract in dispute, their evidence supports a finding that plaintiffs and their predecessors in title have been in hostile, actual, open and notorious, exclusive and continuous possession of the tract in dispute under an unqualified claim of ownership for more than ten years. That is sufficient. State ex rel. Edie v. Shain, 348 Mo. 119,

152 S.W.2d 174, 176; Five Twelve Locust v. Mednikow, Mo.Sup., 270 S.W.2d 770, 775.

The judgment is affirmed.

All concur.