Gary Jay FRIEDERICH and Gail Dean Friederich, Plaintiffs-Respondents,

v.

Noah Lee CHAMBERLAIN and Nora A. Chamberlain, Defendants-Appellants.

No. 54622.

Supreme Court of Missouri, En Banc.

Oct. 12, 1970.

McQuie & Deiter, Montgomery City, for respondents.

Jerome W. Seigfreid, Edwards, Seigfreid & Runge, Mexico, C. P. Lehnen, Wellsville, for appellants.

DONNELLY, Presiding Judge.

This is an action for damages resulting from a vehicular collision, which occurred on September 14, 1967. The Friederichs sued Noah Chamberlain. The Chamberlains counterclaimed against Gail Friederich. The trial court, at the close of all the evidence, sustained Gail Friederich's motion for directed verdict. The Friederichs' case was submitted to the jury, which returned a verdict for Noah Chamberlain. The Chamberlains have perfected an appeal to this Court.

The essential question on this appeal is whether the trial court erred in sustaining the motion for directed verdict on the ground that the Chamberlains failed to make a submissible case against Gail Friederich.

"In ruling the issue presented we must give * * * [the Chamberlains] the benefit of * * * [their] evidence and every inference of fact in * * * [their] favor, which a jury might, with any degree of propriety, have inferred, since a verdict may be directed against * * * [the Chamberlains] only when the facts and inferences to be drawn therefrom, considered in the light of the rule, are so strongly against * * * [the Chamberlains] as to leave no room for reasonable minds to differ." Tharp v. Monsees, Mo.Sup., 327 S. W.2d 889, 894.

A collision occurred between an automobile operated by Gail Friederich and a truck operated by Noah Chamberlain, at a point 2.5 miles south of Montgomery City,

Missouri, on Missouri Route 161, a two-lane blacktop highway, which was wet and slick. The Friederich vehicle was traveling south. The Chamberlain vehicle was traveling north.

The Chamberlains plead and contend here that Gail Friederich was negligent in operating her vehicle on the east half of the highway into collision with the Chamberlain vehicle.

Gail Friederich testified that her car was at all times on her side of the road and that it did not skid before the collision.

Noah Chamberlain testified as follows:

"Q. Now, as you proceeded along and around this curve as you left the bridge, what side of the roadway were you on?

A. I was on my side of the road.

Q. What side would that have been?

A. It would have been the east side.

Q. Did you at any time cross over the centerline?

A. No, sir.

Q. Now, did you see the vehicle that was operated by Mrs. Friederich on that particular occasion? A. I seen a vehicle when I got around 200 or 250 feet from the bridge—I seen a vehicle.

Q. Will you describe to the Jury where that vehicle was when you first saw it and what it was doing?

A. It was about 300 feet from me and it was sideways, sliding down the road sideways.

Q. Now you say it was sliding down the road sideways, in which portion of the highway was it located?

A. Well, it was pretty much on my side of the road.

Q. That would be the northbound lane? A. Yes, sir.

\* \* \* \* \* \*

"Q. Will you tell the Jury, did the vehicle continue to slide sideways down the highway? A. It did for a ways.

Q. All right. What did you do when you first saw the vehicle?

A. I got over on the side of the road and blowed my horn and tried to stop.

Q. When you say you got over on the side of the road, tell the Jury where you pulled your wheels with regard to the road?

A. About 6 inches off of the pavement. It wasn't but about 18 inches from the blacktop over to the edge of the fill on the road.

\* \* \* \* \* \*

"Q. Mr. Chamberlain, tell the Jury what this car of the plaintiffs did as you observed it? A. Well, it was sliding down the road sideways, then all at once the wheel, it seemed like it hit something and just spun around and hit me.

Q. You say it spun around and hit you? A. Yes, sir.

\* \* \* \* \* \*

"Q. Now, Mr. Chamberlain, you stated that you sounded your horn and applied your brakes when you saw her, and pulled to the right?

A. Yes, sir.

Q. How far had your vehicle gotten to the right hand side of the roadway before the collision occurred?

A. Well, I had two wheels off of the pavement when the collision occurred.

\* \* \* \* \* \*

"Q. Which direction was her car facing as it slid down the highway? A. Facing the west.

Q. Her car was facing west? A. The front end of her car was in the center of the road and the back end was on the east side.

Q. And the car was facing west? A. Yes, sir.

Q. Now, did it spin around in what direction then—

A. It spun around to the south and into the side of my truck.

\* \* \* \* \* \*

"Q. Mr. Chamberlain, did you at any time between the time you left the bridge and the time that the collision occurred cross over the centerline of that highway? A. No sir.

\* \* \* \* \* \*

"Q. And do I understand that the first time you saw that car, it was skidding? A. Sideways.

Q. Skidding sideways. Would you say that that car was then out of control? A. I would say so, yes.

Q. That's the very first instant you saw it? A. Yes, sir.

Q. And from that time up until the moment of the collision, it was skidding, is that correct, Sir?

A. Skidding and turning a little bit.

Q. And out of control? A. Yes, sir.

Q. That would be the way you observed it?

A. That's the way I observed it.

Q. So that on the morning of this occurrence, September 14, 1967, you never did see the vehicle of Mrs. Friederich under control?

A. No."

The first question for consideration is whether the law upon which Gail Friederich's theory of defense is based should be preserved. It is ably articulated in Wray v. King, Mo.App., 385 S.W.2d 831, at 833–835, as follows:

"It is too well settled to admit of doubt that a submissible case cannot be made by proof that defendant's automobile merely skidded or slid into collision with plaintiff's vehicle on the highway, for such a mishap (so the courts hold) may as readily be caused by circumstances beyond defendant's control as by his negligence; hence no inference of negligence arises upon such a showing. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 63; Evans v. Colombo, Mo., 319 S.W.2d 549, 550; Evans v. Colombo, Mo.App., 311 S.W.2d 141, 144; Karch v. Stewart, Mo., 315 S.W.2d 131, 135; Doyle v. Wilmesherrer, Mo., 358 S.W.2d 837, 840. Where the evidence of the skidding is confined to the defendant's case, as where he offers it to explain and excuse the accident, it is unnecessary for plaintiff's verdict-directing instruction to make reference to it, because plaintiff is under no duty to hypothesize or otherwise notice defensive or exculpatory evidence introduced by his adversary (although, of course, he may not so frame his instructions as to preclude the jury's consideration of it when properly submitted in defendant's own instructions). Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1021; Murray v. St. Louis Wire & Iron Co., Mo.App., 238 S.W. 836, 839; Evans v. Colombo, Mo.App., 311 S.W.2d 141, 144. But where evidence of the skidding gets into the record as part of plaintiff's own case, he may not ignore it, because, by doing so, he must necessarily *assume* in his instruction that defendant was *in control* of the automobile and was consequently responsible for its maneuvers —a thing which the evidence of its skidding tends to refute, or at least to relegate to the realm of speculation and conjecture.

"The result to which these considerations lead in this case (as in all others where evidence of the skidding is adduced as a part of plaintiff's case), and the reasoning by which that result is justified, may be demonstrated in four successive steps:

"[5] (1st) The *real* issue is *not* whether defendant 'failed to drive on the right half' of the roadway and 'instead went onto the left side,' but whether he was *negligent* in doing so. 'The proximate cause of the collision is to be found in the *cause of the skidding.*' (Italics added). Evans v. Colombo, Mo.App., 311 S.W.2d 1. c. 145. That

is the 'basic issue.' Karch v. Stewart, suppra, 315 S.W.2d 1. c. 135.

"[6] (2nd) If defendant was in control of his car at the time it 'went onto the left side' of the highway—that is, if he *drove* or *operated* it across the centerline—of course he was negligent. Sec. 304.015(2) V.A.M.S. But if the rear end of his car skidded laterally across the centerline on the icy pavement, and the car continued to slide forward in a sideways position into collision with plaintiff's vehicle, it is obvious he was not in control of it, because automobiles are not so constructed as to make possible their controlled operation in that manner. Doyle v. Wilmesherrer, supra, 358 S.W.2d 841.

"[7–9] (3rd) But the unexplained skidding of defendant's car out of control does not, ipso facto, exculpate him. That fact has been said to give rise to an inference that 'is merely ambiguous,' Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W. 2d 418, 423, or to 'two inferences, one of which would support a verdict for plaintiff and the other not,' Evans v. Colombo, Mo. App., 311 S.W.2d 1. c. 145. To avoid the possible anomaly of allowing contradictory inferences to be drawn from the same fact we prefer (and believe it is just as accurate) to say that the skidding of defendant's car, standing alone, gives rise to no inference at all. It simply leaves open the question of negligence or no negligence. It furnishes no guide by which that question can be answered one way or the other, but leaves the issue to speculation and conjecture. If the jury is to resolve it intelligently, the additional information suggested by this query must be supplied: Did the defendant, immediately prior to the collision, operate his automobile in such a negligent manner as to cause it to go into a slide and out of control? When the facts developed by that inquiry are analyzed it will be found that in a two-car collision case (to which the res ipsa loquitur doctrine is not applicable, State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S.W.2d 4, 5) there are but two courses open to plaintiff:

"(a) He may elect to submit defendant's negligence in *causing the car to go out of control* as a ground of recovery. In that event, of course, his verdict-directing instruction must hypothesize the facts that support that theory. Branch v. Gordon's Transports, Inc., supra, 375 S.W.2d 424.

"(b) He may elect *not* to submit on that theory but on some other, as, for instance, 'failing to drive on the right half or east half of said road;' but in that event he may not ignore his own evidence as to the car's skidding or sliding, for that is the evidence 'upon which the submission of negligence must be premised,' Doyle v. Wilmesherrer, supra, 358 S.W.2d 841. In Branch v. Gordon's Transports, Inc., supra, 375 S.W.2d 1. c. 421, the court, supporting that conclusion with a number of authorities, said, 'In our view, this question must be examined in the light of those cases which hold that if, in the process of making a prima facie case or in proving conduct which would ordinarily constitute negligence per se, the plaintiff adduces evidence which tends to show an accidental or non-negligent cause, or a matter which would exonerate the defendant, then the plaintiff's verdict-directing instruction may not ignore the evidence which tends to excuse the defendant, but must hypothesize the possibly non-negligent causes or exculpatory facts and require the jury to find that the defendant's conduct was in fact negligent. Otherwise, the verdict-directing instruction is said to be erroneous as ignoring the real issue, or excluding it from the jury's consideration.' Plaintiff must, in other words, hypothesize enough of the attendant facts and circumstances to warrant the jury in finding that the skidding of defendant's car out of control was itself the result of some antecedent negligence on defendant's part, and hence not a legitimate excuse for the accident."

A case opposing the views expressed in Wray, supra, is Martin v. Bear, 167 Wash. 327, 9 P.2d 365, at 365–366, wherein the Supreme Court of Washington said:

"If a car while driven on the wrong side of the highway collide with another car,

the burden is upon the driver upon the wrong side of the highway to justify his violation of the law of the road. Berry on Automobiles (2d Ed.) § 171, p. 206.

"Respondents insist that they were not violating the law of the road when they were on the wrong side of the road; that they traveled upon their own right-hand side of the pavement until the car skidded from that side of the pavement over onto the left or wrong side of the pavement; and that they were under no duty to explain how and why the accident happened.

"[1] True, the mere skidding of respondents' automobile was 'not an occurrence of such uncommon or unusual character that alone, and unexplained, it can be said to furnish evidence of negligence in the operation of a car.' Osborne v. Charbneau, 148 Wash. 359, 268 P. 884, 886, 64 A.L.R. 251; Vol. 3–4 Huddy Encyc. of Automobile Law (9th Ed.) p. 120, § 68.

"[2] The law of the road, however, required respondents' automobile to keep to the right of the center of the highway. The presence of that automobile on the wrong side of the highway caused an injury and created liability unless excusable or justifiable. While respondents were excusable if, without fault on their part, their automobile skidded across the center line of the highway, the burden of proving excuse or justification was upon them." See also Gum v. Wooge, 211 Or. 149, 315 P.2d 119[6], and cases cited therein; and Raz v. Mills, 231 Or. 220, 372 P.2d 955.

In Missouri, there are at least two cases which would appear to conflict with the views expressed in Wray, supra.

In Miles v. Gaddy, Mo.Sup., 357 S.W.2d 897, at 902, this Court said:

"Section 304.015, subd. 2, RSMo 1959, V.A.M.S., provides that upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway with these exceptions:

(1) when overtaking and passing another vehicle, (2) when a vehicle is making a lawful left turn, (3) when the right half is closed to traffic because of construction or repair, and (4) upon a roadway designated for one-way traffic. Laws 1953, p. 587, § 304.020. Under similar statutes, the cases have also recognized 'excuses' or 'excusable violations' which appear to be of a sort that could not be avoided in the exercise of the highest degree of care as imposed by § 304.010 upon all operations of a motor vehicle. In this category are sudden and unexpected brake failure, blow-out of a tire and non-negligent skid. See for example, Beezley v. Spiva, Mo., 313 S.W.2d 691, 695[5]; Evans v. Columbo, Mo., 319 S.W.2d 549, 552[3]; and Kitchen v. Pratt, Mo.App., 324 S.W.2d 144, 147[1], and related case, Mo.App., 324 S.W.2d 778."

In Hodge v. Goffstein, Mo.Sup., 411 S.W.2d 165, at 169, this Court said: "* * There may be circumstances which excuse a motor vehicle operator who drives on the wrong side of the roadway, but his presence there is sufficient to present an issue of negligence, with his excuse or reason a matter for the jury's consideration."

■■■ We have concluded that the apparent conflict should be resolved, and that the law stated in Wray, supra, and cases cited therein, should no longer be followed insofar as it (1) fails to place the burden of explaining the cause of a skid on the person operating the skidding vehicle; and (2) fails to recognize that the *presence* of a motor vehicle on the wrong side of the road at the time of collision is, of itself, sufficient to create an inference of negligence.

The next question which must be considered is whether it may be said that Gail Friederich "drove" her vehicle on the wrong side of the road.

In Strickland v. Barker, Mo.Sup., 436 S.W.2d 37, cited and relied on by Gail

Friederich, Division 1 of this Court said at 40 and 41:

"In the second place, * * * there is no evidence to support the submission of negligence in that defendant *drove* on the wrong side of the road. Defendant did not *drive* on the wrong side of the road in the conventional and commonly understood meaning of the word 'drive.' To 'drive' an automobile means to impel or urge it to move; to direct its movements, course and direction. The driver's control over the movements of the vehicle is implicit in the term. A slipping, sliding or skidding vehicle, in contrast, is out of control. ' "Skidding" means that the wheels of a vehicle slip sideways, resulting in the inability of the driver to control the movement of the vehicle.' Blashfield's Automobile Law and Practice, Third Edition § 105.38. All of the evidence, including that of plaintiff, indicates that defendant's truck slid, slipped or skidded from its position in the southbound lane across the center line onto the northbound lane and into plaintiff's truck, and that after the skid started defendant had no control over its movements, course and direction.

 &ast; &ast; &ast; &ast; &ast; &ast;

" * * * Defendant's truck, under the evidence in this case, was not 'driven' across the center line, and it was error to submit the case on that theory."

We are of the opinion that the Strickland case should be overruled. Viewing the evidence favorable to the Chamberlains, we must conclude that Gail Friederich was operating her motor vehicle before it began to skid. The fact that the vehicle began to skid and went out of control would not change the status of Gail Friederich as the *driver* of the vehicle. It is not necessary to show that she intended to drive on the wrong side of the road, or that she was in actual control of the vehicle as it skidded, or that she affirmatively guided the vehicle onto the wrong side of the road. It is sufficient to show that she was in charge of the motor vehicle and operating it as it skidded down the wrong side of the road.

We reach the following conclusions:

(1) A submissible case cannot be made against an operator of a motor vehicle by proof that it merely skidded into collision with another vehicle on a highway.

(2) However, if the skidding vehicle is on the wrong side of the road when the collision occurs, an inference of negligence is created. A prima facie case is made. (Cf. Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303, a case involving different facts.)

(3) The burden of evidence then shifts to the operator of the skidding vehicle to excuse the presence of his vehicle on the wrong side of the road.

(4) If no evidence of justification is presented, the question of negligence is for the jury.

(5) If evidence of justification is presented, and the operator of the skidding vehicle moves for a directed verdict, the question of negligence is still for the jury unless such "evidence produced * * * negated that which established the * * * prima facie case so conclusively that no reasonable man could any longer be justified in engaging in the inferences which established the * * * prima facie case." Gum v. Wooge, supra, 211 Or. 149, 315 P. 2d 119, 124.

(6) We believe that, viewing the evidence from the standpoint most favorable to the Chamberlains, the jury could reasonably have found that Gail Friederich drove her vehicle on the wrong side of the road into collision and that absent such act the collision would not have occurred. We hold a submissible case was made for the jury.

(7) The case must be remanded for trial of defendants' counterclaim.

Accordingly, the case is reversed and remanded.

HENLEY, C. J., and FINCH, DONNELLY, MORGAN, HOLMAN and BARDGETT, JJ., concur; SEILER, J., concurs except as to paragraphs (3), (4) and (5) of conclusions.