Dorma Lou McCROSKEY and Loren McCroskey, Plaintiffs-Appellants,

v.

Sarah Ann MARSHALL, a minor, by her guardian ad litem, C. S. Marshall, Defendant-Respondent.

No. 9640.

Missouri Court of Appeals, Springfield District.

Feb. 19, 1975.

Kenneth H. Reid, Turner, Reid & Duncan, John R. Lewis, Springfield, for plaintiffs-appellants.

Devon F. Sherwood, Sherwood & Bruer, Harold J. Fisher, David W. Ansley, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendant-respondent.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

Dorma Lou McCroskey and her husband, Loren McCroskey, brought this action against Sarah Ann Marshall. The petition was in two counts. In Count I Dorma Lou sought damages for personal injuries allegedly sustained by her as a result of an automobile accident which occurred on May 6, 1971, in Greene County, Missouri. In Count II Loren asserted his derivative claim stemming from the injuries to Dorma Lou. The defendant filed a counterclaim against Dorma Lou for defendant's personal injuries. Nine members of the jury found against plaintiffs on their petition and awarded defendant Sarah $12,500 on her counterclaim, and judgment was entered accordingly. Dorma Lou and her husband appeal from that judgment.

In their excellent brief appellants contend that the trial court erred in giving instructions 3 and 4, both of which were tendered by Sarah.

The evidence of both sides was consistent with the following: The incident occurred on Highway AB, which has two lanes separated by an "alternating center line." Before the vehicles were within 300 feet of each other, Dorma Lou was driving an Oldsmobile south in the southbound lane and Sarah was driving a Plymouth north in the northbound lane. The impact between the two vehicles took place at or near the west edge of the southbound lane.

The respective movements of the vehicles after they were within 300 feet is the area where the testimony is in direct conflict and on which liability hangs.

### Dorma Lou's version

Dorma Lou first saw the Plymouth when the Plymouth came over the hillcrest located a short distance south of the point of

impact. When she first saw the Plymouth the front wheels of the Plymouth were across the center line "headed toward me." Dorma Lou's speed was 40 to 50 miles per hour and the speed of the Plymouth was "65 to 70." The driver of the Plymouth "was looking behind and never did look around." Dorma Lou honked, applied her brakes and swerved to the right. *Dorma Lou's car was in the southbound lane at all times prior to the moment of impact.*

### Sarah's version

Sarah was driving the Plymouth and her younger sister Carol was with her. Sarah has no memory of the particulars of the accident. Carol, testifying on behalf of Sarah, stated: "As we were coming out of the dip, the Oldsmobile was coming straight out on our side of the road"; the Oldsmobile was completely in the east lane; with respect to how far the vehicles were apart when she first saw the Oldsmobile in that position, "it was less than 300 feet but I don't know. . . . As soon as I saw the car, (Sarah) must have seen it at the same time because (Sarah) swerved to the left as hard as she could go. . . . As we swerved, the (Oldsmobile) sort of angled over to try to get back on its own side of the road." The Plymouth got completely over on the other side of the road. The speed of the Plymouth was 45 to 50.

Thus it was the trial theory of Dorma Lou that her vehicle was at all times in its proper lane and that the only vehicle to cross the center line was the Plymouth and that such crossing was negligence on the part of Sarah.

On the other hand, it was the theory of Sarah that the center line was crossed three times, twice by the Oldsmobile and once by the Plymouth, and that the Plymouth's maneuver was justified because it constituted an attempt to dodge the Oldsmobile which was improperly occupying the northbound lane.

### The propriety of Instruction No. 4

■ Instruction 4 (omitting the markings with regard to tender and MAI number) reads as follows:

### "Instruction No. 4

Your verdict must be for defendant Sarah Ann Marshall on her counterclaim for damages if you believe:

First, plaintiff Dorma Lou McCroskey drove on the wrong side of the road, and

Second, plaintiff Dorma Lou McCroskey was thereby negligent, and

Third, as a direct result of such negligence defendant Sarah Ann Marshall sustained damage unless you believe defendant Sarah Ann Marshall is not entitled to recover by reason of Instruction No. 5."

Instruction 5, to which instruction 4 refers, was tendered by Dorma Lou and submitted, as an affirmative defense to Sarah's counterclaim, the contributory negligence of Sarah.

Dorma Lou attacks instruction 4 on four grounds.

As her first ground Dorma Lou says that if instruction 4 is based on MAI 17.13 "[t]he language used . . . was not correct as such language was changed prior to trial of this case, and such (instruction) thus improperly deviated from the language prescribed by the Missouri Supreme Court."

The trial of this case took place on October 17 and 18, 1973. On December 19, 1972, the Supreme Court approved and adopted a revision of MAI 17.13, the order reciting that the revised version "must be used on and after July 1, 1973." See Missouri Approved Jury Instructions, 1973 Pocket Part, p. IX. This opinion will refer to the pre-July 1, 1973 version of MAI 17.13 as "old 17.13" and to the post-July 1, 1973 version of MAI 17.13 as "new 17.13."

Compare old MAI 17.13 (including appropriate portions of 17.01) with new MAI 17.13 (italics added to show the differences):

### Old 17.13

Your verdict must be for plaintiff if you believe:

First, defendant *drove* on the wrong side of the road, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence *the* plaintiff sustained damage.

### New 17.13

Your verdict must be for plaintiff if you believe:

First, defendant*'s automobile was* on the wrong side of the road *at the time of the collision*; and

Second, *the* defendant was thereby negligent; and

Third, as a direct result of such negligence plaintiff sustained damage.

---

Note the change in wording in paragraph First. Instruction 4 obviously differs from new 17.13 but it was necessary that it do so. New 17.13 simply does not fit Sarah's version of the accident, for the reason that, in order for Sarah to use new 17.13, paragraph First of the instruction would read: "First, plaintiff Dorma Lou McCroskey's automobile was on the wrong side of the road at the time of the collision." Such an instruction is completely inconsistent with Sarah's version. Under Sarah's version, and under Dorma Lou's version, Dorma Lou's automobile was not on the wrong side of the road at the time of the collision.

New 17.13 does fit the version of Dorma Lou and Dorma Lou properly used new 17.13 in her verdict-directing instruction submitting the claim contained in Count I of the petition.

Even Dorma Lou agrees that Sarah could not use new 17.13. In her brief Dorma Lou states: "Under (Sarah's) own theory of the case, Dorma Lou McCroskey was on her own right-hand and proper side of the road at the time of the collision. We believe this fact alone should make it quite apparent that revised MAI 17.13 could not be applicable to or used in submitting (Sarah's) theory of the case."

Thus, it is clear that Dorma Lou is not complaining about Sarah's non-use of new

17.13. Rather, Dorma Lou is complaining that instruction 4 is based on old 17.13 and that old 17.13 must no longer be used.

"Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.01(e) V.A.M.R. Rule 70.01(a) reads in part: "All instructions shall be submitted in writing and shall be given or refused by the court according to the law and the evidence in the case."

If old 17.13 had been a part of MAI at the time of this trial, it would have applied to Sarah's version and she could have utilized it. But when the trial took place, new 17.13 was in effect and old 17.13 had been taken out of MAI. Thus, there was no applicable MAI for Sarah to use and it was necessary for her to modify new 17.13 "to fairly submit the issues" in the particular case (Rule 70.01(e), supra) or prepare a "not in MAI" instruction. Instruction 4 may be viewed as a "not in MAI" instruction or it may be viewed as a modified version of new 17.13. If considered to be the latter, the modification was necessary and proper because Sarah's version demanded it. If instruction 4 is considered to

be a "not in MAI" instruction, this court holds that it is a proper instruction for submitting Sarah's version.

This is an unusual situation. In almost all cases where an MAI instruction has undergone revision, instruction preparers should conclude that the old form may no longer properly be used. To hold otherwise would be to ignore the revision itself. But MAI 17.13 has had a unique background, a study of which, *viewed in light of Sarah's version*, leads to the conclusion that Sarah's use of it was proper. It is more accurate to state that instruction 4 was proper, not because it happened to be the same as old 17.13, but because it is authorized under Rule 70.01(e) V.A.M.R.

It is significant that the "Committee's Comment [Supplemental]" under new 17.13 refers to Friederich v. Chamberlain, 458 S.W.2d 360 (Mo. banc 1970). In that case Gail Friederich and Noah Chamberlain were the drivers of the two vehicles which collided. Gail sued Noah and Noah counterclaimed. The jury found for Noah on Gail's claim. However, the trial court, with respect to Noah's claim, had sustained Gail's motion for a directed verdict and therein lay the error. Gail was traveling south and Noah was traveling north. Gail testified that her car at all times was on the west side of the road and did not skid. On the other hand, Noah testified that when he first saw Gail's car, it was on the east side of the road, sliding out of control. Noah said the impact occurred near the east edge of the pavement and also said that his vehicle was never on the wrong side of the road.

It will be observed that Gail's version of her accident was similar to that of Dorma Lou. Noah's version is not similar to Sarah's because Sarah admitted that the impact occurred on her wrong side of the road.

The Supreme Court, in *Friederich*, overruled some language in Wray v. King, 385 S.W.2d 831 (Mo.App.1965) and Strickland v. Barker, 436 S.W.2d 37 (Mo.1969), those cases having dealt with skidding vehicles and having been troubled by the argument that a vehicle which is in the act of skidding is not being "driven" in the ordinary sense.

The Supreme Court in *Friederich* addressed itself to the question of "whether it may be said that (Gail) 'drove' her vehicle on the wrong side of the road." It answered the question on p. 366 of its opinion by saying "We believe that, viewing the evidence from the standpoint most favorable to (Noah), the jury could reasonably have found that (Gail) drove her vehicle on the wrong side of the road into collision and that absent such act the collision would not have occurred." On the same page the court said: "We are of the opinion that the Strickland case should be overruled. Viewing the evidence favorable to (Noah), we must conclude that Gail Friederich was operating her motor vehicle before it began to skid. The fact that the vehicle began to skid and went out of control would not change the status of Gail Friederich as the *driver* of the vehicle. It is not necessary to show that she intended to drive on the wrong side of the road, or that she was in actual control of the vehicle as it skidded, or that she affirmatively guided the vehicle onto the wrong side of the road. It is sufficient to show that she was in charge of the motor vehicle and operating it as it skidded down the wrong side of the road."

Note that *Friederich* did not involve the correctness of old 17.13 but, as the cited Committee's Comment under new 17.13 reflects, the decision in *Friederich* led to the revision now embodied in new 17.13.

*Friederich* was a skidding case (according to Noah's version) and materially changed the law in such cases, the changes being set out on the last page of the opinion and requiring no reiteration here.

It seems to this court that *Friederich* simplified the law in skidding cases and that it was the purpose of new 17.13 to reflect that simplification. By the use of the

language "defendant's automobile was on the wrong side of the road" instead of "defendant drove on the wrong side of the road" the possible misconstruction of the word "drove" (as requiring control over movements) was effectively sidestepped.[1]

But that is not to say that in a nonskidding case (as this one is), old 17.13 was erroneous.[2] Since neither Dorma Lou's version nor Sarah's version contains any element of skidding, there is no ambiguity in using the word "drove" in instruction 4. As the evidence in *Friederich* supported a finding that Gail "drove" her vehicle on the wrong side of the road, so Sarah's version supports a finding that Dorma Lou drove on the wrong side of the road. Manifestly, a vehicle cannot be driven on the wrong side of the road unless it is in fact on the wrong side of the road. Thus, a finding that Dorma Lou "drove" on the wrong side of the road necessarily includes a finding that her automobile "was" on the wrong side of the road.

But since Dorma Lou's vehicle was not on the wrong side of the road *at the time of the collision,* new 17.13 could not be used by Sarah.

This court is not unmindful of this language contained in the Committee's Comment [Supplemental] to new 17.13: "1. This is the instruction to use in wrong side of the road cases—not limited to cases where the car got there by skidding." That

comment means just what it says—but since the instruction itself, new 17.13, requires a finding that defendant's automobile was on the wrong side of the road at the time of the collision, it is obvious that it cannot be used in a situation, such as here, where the defendant's (in this case plaintiff Dorma Lou's) automobile was on the right side of the road at the time of the collision. The fact is that new 17.13 is simply not adaptable to the lane-switching conduct embraced in the version of Sarah.

The issues which confronted the jury in this case were clear-cut. Either they believed Sarah's version or they believed Dorma Lou's version. Dorma Lou submitted her version under new 17.13 but Sarah could not do so. Instruction 4 was a proper manner in which to submit Sarah's version. ·

■ As her *second ground of attack on* instruction 4, Dorma Lou says: "Said (instruction 4) failed to require a finding as to the relative proximity of the two vehicles to each other when (Dorma Lou) 'drove on the wrong side of the road,' and thus gave a roving commission to the jury to permit it to find (Dorma Lou) negligent regardless of the time and space separating the two vehicles."

It is the command of Rule 70.01(e) that instructions (either "not in MAI" or "modified MAI") be "simple, brief, impartial,

1. In Robinson v. Gerber, 454 S.W.2d 933 (Mo.App.1970) the court had occasion to refer to some skidding cases which antedated Friederich. At p. 938 the court said: "Those cases and authorities cited therein do condemn instructions that submitted wrong-side-of-the-road 'without any consideration of the manner in which the crossing occurred.' But they are bottomed on the difference between the voluntary act of driving onto the wrong side of the road and the involuntary act of skidding onto the wrong side of the road. *Here, defendants' act was admittedly voluntary so the rationale is irrelevant.*" (Emphasis added).

2. Several months after the date of the Friederich opinion, the Supreme Court handed down Dwyer v. Moss, 462 S.W.2d 645 (Mo. banc 1971). Judge Donnelly, author of the Friederich opinion, wrote the majority opinion. Dwyer's evidence showed that Moss's vehicle collided with that of Dwyer on Dwyer's side of the road but Dwyer submitted under the res ipsa loquitur doctrine. The majority held that the res ipsa loquitur doctrine was not available under the factual situation and said at p. 646: "On re-trial, if there is evidence to support it, (Dwyer) will be entitled to the inference of negligence noted in Friederich v. Chamberlain, Mo.Sup., 458 S.W.2d 360, *and will be entitled to submit his case to the jury under MAI Nos. 17.01 and 17.13."* MAI Nos. 17.01 and 17.13 are the same as what the instant opinion calls old 17.13. See also Middleman v. Complete Auto Transit, Inc., 486 S.W.2d 456, 459 (Mo. banc 1972).

free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." This attack upon instruction 4 is in effect a contention that it should require a finding "of detailed evidentiary facts." Old 17.13 required no such finding and it seems clear that the revision of it had nothing to do with the proposition contained in Dorma Lou's second ground. Dorma Lou says that the instruction assumed "a basic fact which was in dispute, i. e., that Dorma Lou drove on the wrong side of the road *when defendant was approaching so closely as to constitute immediate hazard.*" Before the jury could find for Sarah on instruction 4, the jury had to find not only that Dorma Lou was negligent in driving on the wrong side of the road but also that as a direct result of such negligence Sarah sustained damage. The "roving commission" argument is unsound. Bonenberger v. Sears, Roebuck and Co., 449 S.W.2d 385, 391 [4, 5] (Mo. App.1969); Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612, 617 [2–4] (Mo. 1970); Dwyer v. Moss, 462 S.W.2d 645 (Mo.1971); Bartleman v. Humphrey, 441 S.W.2d 335, 347 [23] (Mo.1969).

The third ground of attack on instruction 4 is that if it is a modified form of new 17.13 "(Sarah) improperly deviated from the applicable language by replacing the word 'was' with the word 'drove.' " This contention is denied for the reasons previously stated.

■ The final ground for attacking instruction number 4 is that it was "so improperly marked as to mislead both the trial court and the plaintiffs." The copies of instruction 4 bore this marking: "Tendered by Defendant—MAI 32.01, 17.13." MAI 32.01 is a contributory negligence instruction, given on behalf of a defendant, submitting, in its paragraph First, three types of conduct, one of which is "(Plaintiff) drove on the wrong side of the road." It is interesting to note, as capable counsel for Sarah point out, that this instruction

was not modified whatsoever in the 1973 revision of MAI which contains new 17.13.

Note also that MAI 32.01 is vulnerable to the same invalid attack contained in Dorma Lou's second ground of attack on instruction 4.

Of course the jury did not see the markings on instruction 4, but it is not necessary to determine whether prejudice would have resulted had it been improperly marked. In view of the circumstances here, it cannot be fairly said that instruction 4 was improperly marked. See Siteman v. Woodward—Clyde & Associates, Inc., 503 S.W.2d 141, 145 [4] (Mo.App. 1973).

*The Propriety of Instruction No. 3*

Instruction 3 (omitting the markings with regard to tender and MAI number, which were the same as those on instruction 4) reads as follows:

"Instruction No. 3

Your verdict must be for the defendant, Sarah Ann Marshall, on plaintiffs' claims for damages (whether or not defendant, Sarah Ann Marshall, was negligent) if you believe:

First, plaintiff, Dorma Lou McCroskey, drove on the wrong side of the road; and

Second, plaintiff, Dorma Lou Mc-Croskey, was thereby negligent; and

Third, such negligence of plaintiff, Dorma Lou McCroskey, directly caused or directly contributed to cause any damage plaintiffs may have sustained."

Dorma Lou attacks instruction 3 on the same four grounds as she attacked instruction 4. For the reasons previously stated with regard to instruction 4, instruction 3 is immune from the same attack. There is one more reason why instruction 3 was a proper submission of contributory negligence *under Sarah's version.* That reason

is, as previously stated, that MAI 32.01 has not been changed.[3]

This court holds that, *with respect to Sarah's version*, neither instruction 3 nor instruction 4 was improper for any of the reasons assigned by Dorma Lou.

The judgment is affirmed.

All concur.

---

3. MAI 17.02, in paragraph First, uses this language: "Drove on the wrong side of the road," and the 1973 revisions made no change.