Terry A. **CHRISCO**, Plaintiff-Appellant,

v.

Jackson B. **FARRIS**,
Defendant-Respondent.

No. 14504.

Missouri Court of Appeals,
Southern District,
Division Two.

April 28, 1987.

Motion for Rehearing or Transfer Denied
May 15, 1987.

David G. Neal, Eminence, for plaintiff-appellant.

Noble I. Leighton, Mountain Grove, for defendant-respondent.

HOGAN, Judge.

This is an action for property damage which arose out of the collision of two vehicles on County Highway A in Shannon County. Plaintiff Terry A. Chrisco was driving his tractor-trailer unit east; defendant Jackson B. Farris was driving his 1974 GMC pickup west. The casualty occurred on a sharp curve which is a short distance east of the junction of County Highway A and Route CC. Neither party sustained any personal injury. The cause was tried to the court sitting without the aid of a jury. The court found against plaintiff Chrisco on his claim and also resolved the issues against the plaintiff and for the defendant on defendant's counterclaim, awarding defendant the sum of $1,400 as damages to the defendant's pickup. Plaintiff appeals, contending that the judgment is not supported by substantial evidence, is against the weight of the evidence, and that defendant's account of the occurrence is contrary to the physical facts. We affirm.

At the place of the accident, Route A runs generally east and west. It is a blacktop highway 19 feet wide and was not marked with a center stripe at the time the collision occurred. An eastbound traveler (here the plaintiff) is presented with a steep downhill grade curving to the left; the road also slopes downhill to the driver's left. A westbound driver (here the defend-

ant) must negotiate an upgrade curve to his right. There were no eyewitnesses other than the parties. It is further to be noted that all the witnesses testified more than 4 years after the event, and although some measurements were carefully made, other factual matters were the subject of variable or doubtful estimates.

Plaintiff saw the defendant's pickup when he came over the knoll, approximately 150 feet ahead "completely on [plaintiff's] side of the road, gazing down the hill at something." The defendant was driving slowly, so the plaintiff "applied the brakes and blowed [the] air horns ... to make [the defendant] conscious of what was happening." Plaintiff was in the eastbound lane when he applied his brakes and sounded his horn, but the brakes "locked up" and the plaintiff's vehicle "started to skid." At several places during the course of his testimony, plaintiff gave as his opinion that "it was the rear wheels doing the sliding." Plaintiff's testimony was that the defendant "whipped his vehicle [in]to the westbound lane," then straightened his course so as to proceed directly west. "[A]t that point," plaintiff testified, "I had missed him with the tractor."

The plaintiff's recollection was that the defendant's pickup sideswiped the tool box on the trailer unit near the middle of the trailer and then collided with the "front dual on the left side of [the] trailer." Plaintiff clarified this by saying that when the defendant struck his trailer, defendant hit the "front axle of the rear duals on the trailer." At the point of impact plaintiff's trailer "jumped sideways" and defendant's pickup was pushed back a little.

Defendant Farris was also familiar with Route A, having driven over the road for one reason or another for 15 or 20 years. Defendant testified that immediately before the accident, he was driving a 1974 pickup west on Route A at a speed of 25 to 30 miles per hour. Defendant was in his proper (westbound) lane of traffic, going uphill around a curve to the right when he first saw the plaintiff. The plaintiff's tractor-trailer unit was "right down the middle of the road" and the defendant was unable to pass in his own lane. Defendant pulled his pickup as far to the right as he could and stopped. At that point the plaintiff's trailer collided with the left front of the defendant's pickup. The defendant was not sure what part of the plaintiff's vehicle struck the pickup, but he thought it was what he described as the "tail end." Defendant's testimony was that when the tractor-trailer came to rest, the tractor was "pointing towards the right side of the road" and the trailer was "right there in the middle of the road."

The plaintiff offered and the trial court received a photocopy of an accident report prepared by Trooper Michael B. Robertson, who investigated the accident. At the time he testified, Trooper Robertson had no independent recollection of the accident. Objectionable parts of the report were deleted, and the diagram of the scene of the accident, purporting to show the positions of the two vehicles before and after the collision, the width of the highway and the location of skid marks made by the tractor-trailer, was admitted.

Trooper Robertson arrived nearly an hour after the accident occurred. The two vehicles had been moved immediately after the collision. The trooper's diagram indicates that Route A is 19 feet wide; there is no shoulder on either side of the road and no center line marked as such. Skid marks were observed and noted by Trooper Robertson. The trooper recorded only the skid marks made by the wheels on the left side of the tractor-trailer. The diagram shows 210 feet of skid marks extending 6 inches into the westbound lane—in which defendant was traveling—but the trooper could not remember whether the skid marks had been made by tires at the front of the tractor, the back of the tractor, or by the trailer. The trooper found no debris indicating a point of collision. Ernest Middleton, who came to the scene to tow the defendant's pickup, remembered seeing skid marks "about a foot over the center" in the westbound lane.

■ As noted, the appellant plaintiff has raised only one point. Slightly paraphrased, that point is that there is no sub-

stantial evidence to support a finding for the defendant, and that the trial court's judgment is contrary to the physical facts. We reject the argument that the so-called "physical facts" rule applies. All are familiar with the rule that probative value cannot be accorded to testimony which is contrary to the physical facts, see *Dawson v. Scherff*, 281 S.W.2d 825, 829 (Mo.1955), but that rule cannot be applied when the operative facts consist in part of estimates or "best recollection," or when the credibility of the witnesses is involved. *Anderson v. Orscheln Bros. Truck Lines, Inc.*, 393 S.W.2d 452, 460 (Mo.1965).

We agree with the plaintiff in his assumption that the principles outlined in *Friederich v. Chamberlain*, 458 S.W.2d 360 (Mo. banc 1970), are controlling here. We restate those principles:

"(1) A submissible case cannot be made against an operator of a motor vehicle by proof that it merely skidded into collision with another vehicle on a highway.

(2) However, if the skidding vehicle is on the wrong side of the road when the collision occurs, an inference of negligence is created. A prima facie case is made....

(3) The burden of evidence then shifts to the operator of the skidding vehicle to excuse the presence of his vehicle on the wrong side of the road.

(4) If no evidence of justification is presented, the question of negligence is for the jury.

(5) If evidence of justification is presented, and the operator of the skidding vehicle moves for a directed verdict, the question of negligence is still for the jury unless such 'evidence produced * * negated that which established the * * * prima facie case so conclusively that no reasonable man could any longer be justified in engaging in the inferences which established the * * * prima facie case.' "

*Id.*, 458 S.W.2d at 366.

In applying these principles, we must bear in mind that this is a court-tried case. The trial judge, as the trier of fact, is at liberty to believe all, none or only part of the testimony of any witness. *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519[1–3] (Mo.App.1985); *Husky Industries, Inc. v. Craig Industries*, 618 S.W.2d 458, 460[1–4] (Mo.App.1981). Moreover, the trial court may draw all reasonable and legitimate inferences from the evidence presented before it, and base ultimate findings upon such reasonable inferences. *State ex rel. Eagleton v. Patrick*, 370 S.W.2d 254, 257[5], 97 A.L.R.2d 1180, 1184 (Mo.1963); *Novak v. Akers*, 669 S.W.2d 644, 647 (Mo.App.1984); *Wills v. Alcorn*, 636 S.W.2d 142, 145 (Mo.App.1982). We cannot know the precise conclusions which the trial court reached because no findings of fact were requested; all fact issues must be considered as having been found in accordance with the result reached. Rule 73.01(a)(2); *Rains v. King*, 695 S.W.2d 523, 524 (Mo.App.1985).

In this case, there was evidence which would justify the inference that the plaintiff's skidding vehicle was six feet on the wrong side of the road when the collision occurred. The defendant testified that when he first saw the plaintiff's tractor-trailer "he was just right—right down the middle of the road." It could further be inferred that plaintiff did not see or appreciate the defendant's approach as soon as he should have, and consequently was obliged to blow his air horn and lock his brakes, causing some part of his tractor-trailer to skid into the westbound lane. Under the principles set out in *Friederich*, 458 S.W.2d at 366, an inference of negligence was created. We cannot say that the evidence produced negated that which established the prima facie case so conclusively that no reasonable man could any longer be justified in engaging in the inferences which established that prima facie case. There is no error in the respect asserted, and the judgment is accordingly affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.